**In re GINSBURG.**

**No. 216.**

Circuit Court of Appeals, Second Circuit.

Feb. 13, 1945.

Garey, Desvernine & Garey, of New York City (Jacob J. Rosenblum, Milton I. Hauser, and Wm. Francis Corson, all of New York City, of counsel), for appellant.

John F. X. McGohey, U. S. Atty., of New York City (Richard J. Burke and Robert Mitchell, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before HUTCHESON, SIMONS, and CLARK, Circuit Judges.

HUTCHESON, Circuit Judge.

What is in question here is whether the district judge was right in denying appellant's motion to suppress the use, in evidence, of property, documents, etc. searched for, seized and taken from defendant's apartment at the time of, and

in connection with, his arrest under a warrant of arrest. Based on the Fourth [1] and Fifth Amendments,[2] this is another of those cases in which appellant and appellee, concerning themselves little with the Constitutional words, seize upon particular words in particular cases [3] to roll them as sweet morsels under their tongues. It may not be doubted that, in respect of searches and seizures, the decisional gloss which constitutes the common law of the Constitution has created in the federal courts a climate of opinion favorable to the citizen, less favorable to his oppressors.[4] Neither may it be doubted that particular decisions have not only struck down particular oppressors but in their vigor and clarity have set up streams of tendency in accord with which later decisions have run.[5] It remains true, however, that each case of this kind is a fact case. The correct decision of each depends not so much upon a higher critical examination of the accumulated decisional gloss as upon a common sense determination of whether, within the meaning of the word the Constitution uses, the particular search and seizure has been "unreasonable,"[6] that is, whether what was done and found bears a reasonable relation to the authority then possessed and exercised or transcends it to become oppression.

The evidence taken by the district judge on the motions runs to 745 printed pages, but the determining facts can be stated in very small compass.[7] On the hearing, the items dealt with in the motion to suppress were roughly divided into Exhibits 4 and 5. As to those in Exhibit 4, though the district judge found that none of the items had been unlawfully seized, the Government offered to return them. As to Exhibit 5, some of the items were found to be "irrelevant" and, therefore, on that ground, deliverable to the petitioner, but there was a general finding that none of them had been unlawfully seized. Here

---

[1] U. S. Constitution, Amendment IV:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] U. S. Constitution, Amendment V:
"No person * * * shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; * * * *"

[3] Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Go-Bart v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L. Ed. 520.

[4] 47 Am.Jur., Secs. 52, 54 and 55; 4 Am.Jur., Secs. 68 and 69 (pp. 48, 49).

[5] Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; United States v. Lefkowitz, 285 U.S. 452.

[6] Go-Bart v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374; Matthews v. Correa, 2 Cir., 135 F.2d 534; United States v. Lindenfield, 142 F.2d 829 at pages 832, 833.

[7] Sufficiently convinced after investigation that appellant had accepted a bribe of $3000.00 in August, 1943, the agents 8 months later, on April 28, 1944, swore out a warrant for defendant's arrest for that crime. On the morning of April 29, armed with the warrant, they went to appellant's apartment and, entering it, placed him under arrest. Thereafter, one of the agents kept him in custody while the other agents for about an hour and a half conducted a thorough search of the four room apartment. As a result of it, they seized and took away a great many articles, approximately 260 separate items, including three metal boxes described as one small, one medium and one large size box, the latter known in the case as the large green box. The smallest of these boxes was unlocked, the other two were locked. The two locked boxes were taken away still locked and later, opened, were found to contain, among other things, securities of undetermined value and $73,955.00 in cash. The Internal Revenue Department was notified of the discovery and a jeopardy assessment in the sum of $82,297.91 was at once filed on everything of value.

the Government divides the materials seized into three groups. The first consists of $73,955 in cash together with a number of securities of a substantial monetary value found in the locked metal box described as the large green box. The second consists of materials of a monetary value against which the Bureau has filed a tax lien. The third consists of the balance of the material having no apparent value. Contending only for an affirmance as to the articles in the first group, the Government does not contest the suppression as evidence of the material in the second and third groups. Except, therefore, as the generality of the search which swept these articles into its compass bears generally upon the question of its unreasonableness, the seizure of these articles is not a matter of contention before us, and our determination is confined to whether the arrest under the warrant authorized the search for, and seizure of, the money and papers in the first group. The Government contends that this money and these papers were searched for and seized as fruits or instruments of the crime for which the arrest was made. Appellant denies this, pointing out that the fruits of the crime for which he was arrested were self limited to $3000, and there is neither claim nor proof that the $3000 supposed to have been given eight months before was in any way traced into or connected with the moneys or securities found. The government is of the opinion that this view is too foreshortened and that the evidence of easy and affluent living the apartment afforded in contrast with the meagerness of appellant's salary, furnished ample evidence of venality on a large scale. It, therefore, insists that, in connection with the arrest, the agents were authorized to make a general search of the apartment for evidence of misbegotten wealth, and that what was found in the box was lawfully seized as weapons, fruits or instrumentalities of a life of crime. The argument seems to run thus: they had arrested appellant for bribe taking; in his apartment, luxuriously staffed and furnished, they found large boxes, two of them locked; they had a right to suppose that these boxes contained bribe money, and, therefore, a right to take and break them open; and having found so much money and securities they had the right to seize the moneys and securities as the fruits not necessarily of the crime for which the arrest was made but of other similar crimes.

Appellant, denying that the search may be sustained on such grounds, attacks it as a general exploratory one not stemming from and based on the authority the agents had to search in connection with the arrest under warrant, but one founded on suspicion and prosecuted not to obtain fruits or instrumentalities of the particular crime for which the arrest was made but to ferret for evidence, and, therefore unreasonable both in its purpose and effect. He insists too that assuming that the search in its nature, that is in the way it was carried out, was reasonable, the seizure was not, because the things found and now sought to be retained are neither fruits of crime, instruments of crime, or otherwise seizable.

We agree with appellant. Passing the contention that the search passed the bounds of thoroughness with a particular object in mind, and became merely a general exploratory search for evidence with which to convict of crime, we agree with appellant that the seizure of the money and securities encompassed things not criminal in themselves and not identified as fruits or instrumentalities of the crime for which the arrest was being made, and was therefore unreasonable under the Constitution. If the officers had been armed with a search warrant, they could not have seized the money and securities in question here unless they could have shown that they had some relation to the crime charged. Without a search warrant, they certainly could not fine tooth comb the apartment to gather into their net moneys and securities not shown to have at least some plausible connection with or relation to the crime for which he was arrested. The order may not stand. It is reversed, and the matter is remanded for further and not inconsistent proceedings.