**UNITED STATES of America**

v.

**James Colburne HOWARD.**

**No. 872.**

United States District Court
D. Maryland.
Feb. 8, 1956.

George Cochran Doub, U. S. Atty., James H. Langrall, Robert R. Bair, Asst. U. S. Attys., Baltimore, Md., for plaintiff.

Herbert H. Hubbard (France, Rouzer & Harris), Baltimore, Md., for defendant.

CHESNUT, District Judge.

In the above matter there is a motion before the court filed by Philip Joseph Howell for the return to him of certain property which had previously been seized by the Federal Bureau of Investigation, an Agency of the United States, under a search warrant issued by the Honorable Roszel C. Thomsen, Chief Judge of this court. The United States Attorney opposes the return of any of the seized property. The motion has been heard in court on evidence and arguments by Herbert H. Hubbard, court appointed counsel for the claimant, and James H. Langrall and Robert R. Bair, Assistant United States Attorneys representing the United States. The facts relevant to the motion are as follows:

On November 16, 1955 the Grand Jury for the United States District Court for the Eastern District of Pennsylvania returned an indictment against James Colburne Howard and two other defendants charging, among other things, armed robbery of a Pennsylvania bank whose deposits were insured by the Federal Deposit Insurance Corporation, alleged to have occurred on or about October 10, 1955. On the basis of this indictment the petitioner, Philip Joseph Howell, was arrested in Baltimore on January 13, 1956. He was at once taken before Ernest Volkart, United States Commissioner for this district, and, in accordance with the applicable federal rule of criminal procedure, was duly advised of his rights and, there being no warrant which had been received for his arrest, the case was continued by the Commissioner until January 16, 1956. On the latter date a further hearing was held. In the meantime the Commissioner had received a certified copy of the indictment and the defendant waived any further hearing and the Commissioner committed him in default of bail of $15,000 to be removed for trial to the Eastern District of Pennsylvania at Philadelphia, which, by judicial notice, is less than 100 miles from Baltimore where the arrest had been made. Very shortly thereafter on the same day Thomas C. Martin, an F. B. I. Agent, submitted evidence to the Honorable Roszel C. Thomsen, Chief Judge of this court, seeking the issuance of a search warrant to search the contents of safe deposit box No. 189 of the Aurora Federal Savings & Loan Association, 5 West Sara-

toga Street, Baltimore, Maryland, for the purpose of finding therein all or part of the sum of $19,777.31 in currency alleged in the indictment to have been stolen from the Wayne Title & Trust Company of Wayne, Pennsylvania. An exhibit annexed to the application contained a description of currency and cash making up all or part of the amount of $19,777.31. It described the alleged probable contents in the box in part as

"Two hundred $5.00 bills, Series 1950 having Serial Nos. C68901601A to 700A and C68901701 A to 800A; An undetermined number of $10.00 bills, one of said bills bearing the figure '$95' in heavy pencil or ink and being mutilated, i. e., ripped in half" and also an undetermined number of $100.00 bills.

Two affidavits were also annexed to the application for the search warrant which was found by Judge Thomsen to constitute probable cause for issuance of the warrant. The Judge also signed a further order directed to the Aurora Federal Savings & Loan Association requiring it to give access to the box pursuant to the search warrant. The order contained a proviso that the defendant or his attorney should be permitted to be present at the opening of the box and that the defendant, in the custody of the United States Marshal, should at the time of the opening and entry be taken to the box to afford him an opportunity to be present.

The key to the box was found in the possession of the defendant who declined the opportunity to be taken to the box when opened. The box had been rented by him from the Aurora in the name of Joseph Nash. The return made by the Agent of what had been taken from the box showed that he had taken therefrom two packages wrapped in paper, one package containing $2,200 in currency and the other package containing $1,200 in currency, both packages bearing the name of Joseph Nash. One package contained 150 $10 bills; 25 $20 bills; 3 $50 bills; 2 $20 bills and 1 $10 bill. The other package contained 240

$5 bills, aggregating $1,200. The Agent also took from the box "Savings pass book No. S16718 issued to Joseph Nash on 11/10/55 by Aurora Federal Savings & Loan Association reflecting a balance on 12/16/55 of $2,000." Some other contents of the box not relevant here were returned thereto and not removed.

It is to be noted that the description of the property to be seized particularly described in the exhibit made a part of the search warrant was "Two hundred $5 bills, Series 1950, Serial Nos. C68901601A to 700A and C68901701A to 800A." And there was evidence that among the 240 $5 bills seized 92 bore markings of serial numbers precisely described in the exhibit attached to the search warrant. Counsel for the petitioner Howell does not press for the return of the 92 $5 bills but does demand the return of the pass book showing a credit balance of $2,000 and also of the other currency amounting to $2,-940, and it is to be noted that of this latter amount of $2,940 in currency there was no description thereof in the search warrant except as to "an undetermined number of $10.00 bills". The search warrant also described an undetermined amount of $2 bills and $100 bills and $1 bills, none of which, however, were found in the box.

There was further evidence by a witness for the United States that she was a teller at the Wayne Title & Trust Company on October 10, 1955, and personally witnessed the holdup and robbery of the bank by three disguised men of whom she was unable to give an identification. But she testified that on one of the $5 bills which had been found in the safe deposit box there was a notation in her handwriting of the numeral "80" which she remembered to have placed on the topmost one of 80 $5 bills in her teller's cage shortly before the robbery and therefore must have been included in the robbery. The $5 having the notation was other than the 92 above referred to.

There was evidence that of the $10 bills found in the box 98 bore serial

numbers, one in numerical sequence to the other, and all being numbered Series 1950A C22263301B through C22263398B. There was also evidence that these bills were new currency which had been received from Washington by the Federal Reserve Bank for Philadelphia after September 2, 1955 and had been distributed by the Reserve Bank to member banks who in turn, in ordinary course, also further distributed them to other banks in that territory.

The claimant testified that he had been confined in prison for some years and had only been released about July 1955. Between July 1955 and the date of his arrest in Baltimore he had been at times temporarily employed as a painter and received some wages therefor and for a few days prior to his arrest he had been engaged as a hospital attendant at the Johns Hopkins Hospital. Shortly prior thereto he had been a surgical patient at the Franklin Square Hospital in Baltimore. He further stated that soon after his release from prison in July 1955 he had redeemed about $800 of United States Savings Bonds which had been bought for him while in prison from moneys earned there. And it also appeared that he had receipted for the money paid in redemption of said bonds in the name of James Colburne Howard, and he said that he had signed the name of James Colburne Howard because while it was not his correct name, which is Howell, the bonds had been bought for him in the name of Howard and he could not obtain the money for them except by signing in that name. With reference to the safe deposit box which he opened in the name of Joseph Nash he said that after his experience in prison he wished to make a fresh start under a new name. He also contended that he had been improperly imprisoned under the name of Howard as a result of a mistake that had occurred and which he was unable to have corrected as a result of several reported cases, including a denial of certiorari by the Supreme Court of the

United States. Howard v. Claudy, 347 U.S. 993, 74 S.Ct. 858, 98 L.Ed. 1126.

Counsel for the claimant has also included in the motion for a return, a separate motion to suppress as evidence the contents of the safe deposit box. In support of that contention he relies largely on rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which reads:

"(e) Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

It will be noted that the rule specifies 5 separate grounds for the return of the property and suppression of evidence. Of these only No. 3 "the property seized is not that described in the warrant" is seemingly in point because

I find that the contents of the box were seized on a validly issued search warrant based on sufficient probable cause and the warrant was legally executed and a proper return thereof was made.

It is also to be noted that the rule provides "If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had".

■■ While it has been said the rule is in the nature of a codification of existing law, I do not understand that it embodies in itself *the whole* of the law of search and seizure; nor do I think the rule is controlling here by reason of the phrase "(3) the property seized is not that described in the warrant". It is clear enough at least that a substantial portion of the money particularly described in the warrant was among the contents of the box seized. The rule also provides that if the motion is granted the property shall be restored *unless otherwise subject to lawful detention.* In my opinion all the contents of this safe deposit box were subject to lawful detention as there is a reasonable basis for contending that the contents of the box which were seized were the fruits of the alleged crime. Of course I do not intend to express any opinion on the merits of that point as it will be a matter for the trial court to determine. While I have concluded that the motion to require a return of all or part of the seized contents of the box and the motion to suppress the evidence thereof should be overruled by this court, I do so with the proviso that the ruling shall be without prejudice to a renewal of the motions in the trial court.

■■■ My understanding of the law of search and seizure is in substance this. When a lawful arrest had been made there may be a valid search of the defendant and of the place where he is arrested if under his immediate possession or control, for things which may reasonably be thought to have some definite relation to the offense for which the arrest has been lawfully made. And similarly where a search warrant has been validly issued and executed, things found by the officers having reasonable relation to the purpose of the search warrant may likewise be seized and lawfully held in custodia legis.

The basic law is, of course, the Fourth Amendment which prohibits unreasonable searches and seizures and forbids search warrants to be issued except upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the person or things to be seized. What constitutes a reasonable search and seizure has been the subject of many adjudicated cases by the Supreme Court and other federal courts. The decisions in the adjudicated. cases have necessarily depended upon the facts and circumstances of the respective cases; and in many of the recent cases in the Supreme Court, the court has been much divided. Two of the most recent cases are Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, and United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. In both the search and seizure were upheld by the majority opinions, but neither on the facts is controlling here. In the Harris case it was said in the opinion by Mr. Chief Justice Vinson for the majority of the court [331 U.S. 145, 67 S.Ct. 1103]:

"This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, *the fruits of crime* such as stolen property, weapons by which escape of

the person arrested might be effected, and property the possession of which is a crime." (Italics supplied.)

The decided cases are too numerous to review in detail but a few may be referred to as illustrative of what may and what may not be lawfully retained when seized incident to an arrest or search warrant. Some of the cases which tend to support the conclusion here reached are United States v. Old Dominion Warehouse, 2 Cir., 1926, 10 F.2d 736, opinion by Circuit Judge Learned Hand; Bennett v. United States, 4 Cir., 1944, 145 F.2d 270; United States v. Klapholz, D.C.S.D.N.Y.1955, 17 F.R.D. 18; Honig v. United States, 8 Cir., 1953, 208 F.2d 916; Paper v. United States, 4 Cir., 1931, 53 F.2d 184. In other cases under different facts the seizure has been held improper. Marron v. United States, 1927, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; Honeycutt v. United States, 4 Cir., 1921, 277 F. 939; In re Ginsburg, 2 Cir., 1945, 147 F.2d 749. See also United States v. Goodhues, D.C.Md.1931, 53 F.2d 696; Rea v. United States, 76 S.Ct. 292.

 Counsel for the claimant strongly contends that the bank book showing a balance on deposit of $2,000 as of December 16, 1955 should be returned. He points out that it was in no way described in the search warrant and further that the claimant as defendant in the criminal case will be much dependent upon the moneys available for his defense particularly to enable him to make his own selection of counsel. The contention is not without force and this particular thing among those seized calls for some further comment. The United States contends that the $2,000 credit evidenced by the bank book is a part of the fruits of the bank robbery. An examination of the entries in the book shows that they were all made in November or December 1955, the deposits being either in round figures of $500, $700 or $100, and the only withdrawal being $500 on December 16, 1955. It is also to the borne in mind that there is evidence that the bank robbery on October 10, 1955 was made by three men acting together and that the amount of money stolen was about $19,000. The contents of the safe deposit box revealed the claimant's possession of currency in the amount of $3,400 and the bank book was evidence of possession of $2,000 more, or $5,400 in all. While I have had some doubt with regard to whether the bank book should not be returned, I have concluded under all the evidence submitted that there is a reasonable basis for the government to contend that the bank book, although not named in the search warrant, may be presently retained by the government in connection with its contention that it represents in part the fruits of the alleged crime. The claimant has not offered at this time any satisfactory evidence to show his lawful possession of over $5,000 in money or credits. It is not possible for this court at this time to definitely determine title to or ownership of the money and property seized and I think the trial court will be better able to determine this later on. All the contents seized from the box will remain in the custody of the Government Officials and will be in due course transferred with the prisoner from this district to the jurisdiction and authority of the District Court for the Eastern District of Pennsylvania at Philadelphia. I assume, of course, that in accordance with Rule 44 of the Federal Rules of Criminal Procedure the trial court will make proper provision for the appointment of counsel to represent the defendant if he is unable to obtain counsel of his own selection; and if the trial court concludes that it is necessary for the proper defense of the defendant and in the interests of justice that some part or all of the seized money should be returned to him, out an appropriate order to that effect can be made, because as I have already noted, the decision here to presently retain the contents of the box is made without prejudice to the renewal by the claimant of motions for the return of the

**382**

property or suppression of evidence in the trial court.

For these reasons the motions to return the seized property and to suppress the evidence are denied without prejudice.