**WOO LAI CHUN, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 16318.

United States Court of Appeals
Ninth Circuit.

Jan. 20, 1960.

Mathews, Circuit Judge, dissented.

James E. Burns, San Francisco, Cal., for appellant.

Lynn J. Gillard, U. S. Atty., Bernard A. Petrie, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MATHEWS, BAZELON and BARNES, Circuit Judges.

BARNES, Circuit Judge.

On May 15, 1958, appellant (Woo Lai Chun) and others were indicted in the United States District Court for the Northern District of California, Southern Division. The indictment was in nine counts. We are here concerned only with counts six and eight.

Count six charged that appellant, "did, on or about June 5, 1956, in San Francisco, Northern District of California, willfully import, transport and deal in, without authority from the Secretary of

the Treasury, merchandise originating in China and drugs and prepared medicines of Chinese type, to wit, pills, herbs, powders, ointments and liquids," in violation of 50 U.S.C.A. Appendix, § 5(b),[1] and regulations issued thereunder, including 31 CFR § 500.204.[2] Count eight charged a similar violation occurring on or about March 1, 1957.

Prior to trial, appellant filed in the district court a motion entitled "Motion to Suppress Evidence," which was heard and denied. Thereafter, appellant had a jury trial and was found guilty on counts six and eight. A judgment of conviction was entered, sentencing appellant to pay a fine of $1,000 and placing him on probation for two years. From that judgment this appeal was taken.

Thereafter, appellant and appellee (the United States) filed in the district court the following stipulation:

"It Is Hereby Stipulated that the record on appeal need only consist of the proceedings with reference to the Motion to Suppress; that after said Motion to Suppress was denied prior to trial that all of the rights of [appellant] with reference to said

Motion were reserved by proper objection during the course of the trial, and that all of the evidence, [3] including exhibits and testimony against [appellant], was obtained through the use of the evidence which was the subject matter of the Motion to Suppress.

"It Is Hereby Further Stipulated that had the evidence which was the subject matter of the Motion to Suppress not been admissible that [appellant] could not have been prosecuted successfully."

The record on appeal includes a transcript of proceedings had at the hearing on the motion, but does not include any transcript of proceedings had at the trial.

The seized property consisted of envelopes and letters found in the course of a search made under a search warrant issued on November 9, 1957 by the United States Commissioner of the Northern District of California. The warrant was directed solely to "medicinals and herbs made in China." [4]

A return on the warrant was made by John Brockman, Jr., a United States customs agent. The return stated, in

---

1. Section 5(b) provided: " * * * Whoever willfully violates any of the provisions of [§ 5(b)] or of any * * * regulation issued thereunder, shall, upon conviction, be fined not more than $10,-000, or, if a natural person, may be imprisoned for not more than ten years, or both; * * * "

2. Regulations issued under § 5(b) were called Foreign Assets Control Regulations. One such regulation was 31 CFR § 500.204, reading as follows:
" * * * Except as specifically authorized by the Secretary of the Treasury * * *, no person subject to the jurisdiction of the United States may * * * transport, import, or otherwise deal in * * * any merchandise outside of the United States if such merchandise is:
" (1) Merchandise the country of origin of which is China (except Formosa) * * * "

3. Meaning, obviously, the evidence received at the trial. What that evidence was, we do not know.

4. The warrant read:
"To Customs Agent in Charge, U. S. Treasury Dept., San Francisco, Calif., or any of his Criminal Investigators or Agents:
"Affidavit having been made before me by Joseph B. Jenkins, Criminal Investigator, United States Treasury Department, that he has reason to believe that on the premises known as Wing and Wing Trading Co., 915 Stockton Street, San Francisco, in the Northern District of California, there is now being concealed certain property, namely, medicinals and herbs made in China, which are designed and intended for use and which have been used as the means of committing criminal offenses, to wit, violations of the Foreign Assets Control Regulations and [19 U.S.C.A. § 1592] and as I am satisfied that there is probably cause to believe that the property so described is being concealed on the premises above described and that the foregoing grounds for application for issuance of the search warrant exist.
"You are hereby commanded to search forthwith the place named for the prop-

substance, that Brockman executed the warrant on November 12, 1957 by searching the premises described in the warrant, seizing the property described in the inventory accompanying the return and leaving at the place of search a copy of the warrant and a receipt for the seized property.

The inventory described the seized property as consisting of envelopes and letters. These were letters addressed to the appellant in which mention was made of shipments to appellant of herbs and medicines from various parts of the United States. At the hearing on the motion four witnesses testified—three for appellant and one for appellee. Appellant's witnesses were Joseph B. Jenkins, John Brockman, Jr., and James Wong Hoy.[5] Appellee's witness was Stephen K. Louie.

From the testimony, as from the return, it appeared that the searched premises were those described in the warrant. They consisted, in part, of a store in which Chinese "art goods" were sold. The search was made, not by Brockman, but by five or six customs agents and investigators acting under Brockman's supervision and direction. One of the searchers was Louie; and Jenkins and Hoy were present during the search but did not participate therein. It did not appear that appellant was present.

From Hoy's testimony it appeared that there was at the back of the store a small room which at the time of the search was occupied and used by Hoy as an office; that Hoy had rented the room from a Mr. Woo; and that Mr. Woo had a desk at the back of the store.

A stated ground of the motion was that the seized property was not that described in the warrant. "No Warrant shall issue [unless] * * * particularly describing the * * * things to be seized." U. S. Const., amend. IV. Rule 41(e) (3), Fed.R.Crim.P., 18 U.S.C.A. It is clear that the seized property was not so described but was allegedly discovered in the course of a search for property which was described. The letters seized were among one hundred to two hundred private papers located either in a cabinet or a desk drawer or in some cartons. Agent Louie, having noticed by chance that one of these papers made mention of an herb, was authorized by Agent Brockman to read the remainder. Fourteen papers in which herbs or medicines were mentioned were seized. The district court held that the discovery was incidental to a lawful search, and thus the seizure was not unreasonable or unlawful. Hence the denial of the motion.

The letters seized were not described in the search warrant. They then were improperly seized unless they were instrumentalities of the crime itself. Marron v. United States, 1927, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231. In Takahashi v. United States, 9 Cir., 1944, 143 F.2d 118, at page 123, we laid down the general proposition "that a reasonable seizure can only be made of instrumentalities of the crime itself and not of private papers which are mere evidence or indicia of the commission of a crime."

Here, as in the Takahashi case, we face the problem of whether we should hold that the papers "are a part of the outfit or equipment actually used to commit an offense," or whether the papers are mere "evidences of intent, design or even of the agreement of the defendants."

We can with profit consider some of the precedents. In Gouled v. United States, 1921, 255 U.S. 298, 41 S.Ct. 261, 264, 65 L.Ed. 647, the two defendants, Gouled and Vaughan, were suspected of defrauding the government through contracts with it for clothing and equipment. Two search warrants had been duly issued, the first referring to "certain prop-

---

erty specified, serving this warrant and making the search in the daytime and if the property be found there to seize it, leaving a copy of this warrant and a receipt for the property taken, and prepare a written inventory of the property

seized and return this warrant and bring the property before me within ten days of this date [November 9, 1957], as required by law."

5. Appellant did not testify.

erty, to wit: certain contracts * * * used * * * as a means for the bribery of a certain officer of the United States." The second warrant referred to "certain letters, papers, documents and writings which relate to [concern] and have been used in the commission of a felony, to wit: a conspiracy to defraud the United States." [6]

After a short historical examination of the constitutional prohibition against unreasonable search and seizure,[7] the Supreme Court held the only purpose of the three papers involved was to use them "as evidence against the accused," and that therefore they were taken in violation of the fourth amendment and their introduction in evidence prohibited by the fifth amendment.

In Marron v. United States, supra, the defendant was convicted of a conspiracy to maintain a nuisance in violation of the Prohibition Act, 27 U.S.C.A. § 1 et seq. Certain bills and a ledger were obtained by prohibition agents when they entered premises pursuant to a search warrant describing the things to be seized as "intoxicating liquors and articles for their manufacture." [275 U.S. 192, 48 S.Ct. 75.]

The Court first ruled that the seizure of the ledger and bills was not authorized by the warrant;[8] then, that inasmuch as the officers had made an arrest for a crime being committed in their presence as they were authorized to do, "they had a right, without a warrant, contemporaneously to search the place in order to find and seize the things used to carry on the criminal enterprise. * * * If the ledger was not as essential to the maintenance of the establishment as were bottles, liquors and glasses, it was none

the less part of the outfit or equipment actually used to commit the offense" and hence was lawfully seized.

In United States v. Lefkowitz, 1932, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, the Marron case is discussed and distinguished.[9] In Lefkowitz the defendants were charged with a conspiracy to sell, possess, transport, furnish, deliver and take orders for intoxicating liquors, in violation of the National Prohibition Act. The arrest was made in an "order room" where orders were solicited for express delivery of liquor. Pursuant to warrant of arrest, defendants were arrested in the "order room," and the officers explored all desks, cabinets, waste baskets, etc., and found various letters, books and papers. There was no liquor in the room.

The Supreme Court held (a) the soliciting of orders in the room did not constitute a nuisance, (b) the accused were not committing a crime when arrested, (c) the search was not justifiable as an incident of the arrests. The Court further states Lefkowitz does not differ materially from Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374, "and is ruled by it."

In Go-Bart, the arresting officers, relying on an invalid warrant and making a general search, seized certain papers. No crime was being committed in the officers' presence. The arrest was assumed lawful, but the search held unreasonable.

It is true that each case is bottomed on its own facts. Here, the search warrant was lawfully issued. It specifically described "medicinals and herbs." The inventory discloses the only objects taken were letters. There was no crime be-

---

6. No exception was taken to the sufficiency of the description of the property to be seized either in the affidavits or the warrant.

7. 255 U.S. 298, 308–311, 41 S.Ct. 261, 65 L.Ed. 647.

8. "The requirement that warrants shall particularly describe the things to be

seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

9. 285 U.S. at pages 462–466, 52 S.Ct. at pages 422–423.

ing committed on the premises when the search took place. There was no arrest of anyone on the premises—hence the search was not made incident to an arrest.

In the instant case the sixth and eighth counts charged the defendant with "importing, transporting, and dealing in, without authority from the Secretary of the Treasury," certain medicinal herbs.

The government urges that there was no general search, but an incidental discovery of the file of letters occasioned by a glance at a letter in a pile containing the words in Chinese meaning "medicinal herbs." The testimony of the government's witnesses seems to refute this position. There were at least five agents searching. The search admittedly lasted from 10:30 A.M. to 2:30 P.M.,[10] although there was a short undefined amount of time taken out for lunch. Mr. Brockman "presumed" a filing cabinet was searched. His memory was vague as to the existence of a bookcase. A fair reading of the evidence clearly discloses this was more than an incidental discovery of something in plain sight.

Stephen K. Louie, a government agent, who read Chinese and "incidentally discovered" the letter referring to medicinal herbs, testified he "might have" gone through the desk drawers. He knew if he had not, someone else had. The file cabinet drawers were also searched. Louie took a file of letters from a box in the bookcase, one hundred to two hundred in number, and "in the process of thumbing through, I saw a letter that men-

tioned an herb. Then I pulled that letter out." Other papers from other portions of the premises may have been shown Louie. He could not say whether all the letters introduced in evidence came from the box, or somewhere else in the premises.

■ We conclude that the search of the premises was a general search; it was for something not described in the search warrant; it was not made incidental to an arrest; it was for the purpose of obtaining evidence against the accused; it sought evidence not in plain view.

We find no similarity between the facts in this case and those where stolen or contraband property, or articles closely related to that which was sought, have been held properly seized, even though not described in the search warrant.[11] This was an unreasonable search, and the seizure was unlawful.

■■ We do not think it necessary to discuss the government's third point; that the letters seized qualify as "public records," required to be kept by the appellant. First, the point was not raised below; secondly, the warrant issued, the return made, and the testimony of those searching indicated they were not making the search with any idea of reaching "public records."

The judgment of conviction is reversed on each count.

MATHEWS, Circuit Judge, dissents.

---

10. James Wong Hoy, not a defendant, testified the agents were searching from 10:30 A.M. to 12:30 P.M., and from 1:00 or 1:30 to 6:00 P.M., and that some of the letters seized came from the cabinet, some from cartons on a bookcase, some from a desk drawer.

11. See dissent of Frankfurter, J., in Zap v. United States, 1946, 328 U.S. 624, 630, 66 S.Ct. 1277, 90 L.Ed. 1477. United States v. Howell, 3 Cir., 1956, 240 F.2d 149, affirming sub nom., United States v.

Howard, D.C.D.Md.1956, 138 F.Supp. 376 (savings bank book and unmarked money seized in search of safe deposit box under warrant describing, in some instances by serial number, money stolen in bank robbery); Bennett v. United States, 4 Cir., 1944, 145 F.2d 270 (warrant specified counterfeiting apparatus, counterfeit ration coupons also seized); United States v. Old Dominion Warehouse, 2 Cir., 1926, 10 F.2d 736 (warrant specified 10–12 barrels of whiskey, 4,000 cases of liquor seized).