77 F.3d 491
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard E. YERGER, Defendant-Appellant.
 Nos. 92-50042, 94-50332.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 5, 1995.
Decided Feb. 12, 1996.
 
 Before: WALLACE, SNEED, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant-appellant Richard E. Yerger appeals for the second time the district court's denial of his motion to suppress evidence. We now affirm the district court's judgment.
 
 I.
 Facts and Prior Proceedings
 
 3
 On November 15, 1990, law enforcement authorities executing a search warrant discovered an underground marijuana cultivation operation in a house on Avenue E in Lancaster, California. During this search, officers observed mail addressed to Richard F. Yerger, the son of defendant-appellant Richard E. Yerger. Recognizing the name Richard Yerger from an unrelated investigation involving the elder Yerger, officers then proceeded to the elder Yerger's home on Camares Drive in search of him.
 
 
 4
 Although Richard Yerger was not at home, his cohabitant, Sharyn Stewart, was; she gave the officers oral permission to "look around" the house. After the officers had done so for about one hour, she signed a written consent to search the house for "narcotics, weapons and paper work relating to narcotics transactions."
 
 
 5
 During this search, the officers examined several upstairs file cabinets containing private records related to Yerger's construction business. They observed numerous files concerning a house Yerger had built on Largo Vista Road in Llano, California. Because of its remote location, the officers suspected the Largo Vista house might contain another marijuana garden.
 
 
 6
 The next day, November 16, two officers drove to the Largo Vista house, which, on visual inspection, proved to possess such similarities to the Avenue E house as to strongly suggest it contained a marijuana operation. The officers drove to a nearby telephone to call for reinforcements, and returned to the house about 90 minutes later to conduct a "protective sweep" during which they observed many marijuana plants. The officers seized no evidence at that time.
 
 
 7
 Later that day, the officers obtained a search warrant for both Yerger's Camares Drive home and the Largo Vista house. During these warranted searches, conducted on November 16, they seized about 6,000 documents from the Camares Drive home and about 4,000 marijuana plants and equipment used in the cultivation operation from the Largo Vista house.
 
 
 8
 Richard E. Yerger was indicted and convicted of conspiring to possess marijuana with intent to distribute and aiding and abetting the possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. Yerger appealed the district court's denial of his motion to suppress evidence. We vacated the denial and remanded with directions to apply the scope of consent standard articulated in Florida v. Jimeno, 500 U.S. 248 (1991).
 
 
 9
 On remand, the district court applied the Jimeno standard and again denied Yerger's motion to suppress evidence. Yerger timely appealed that ruling. Thereafter, we granted his motion for reinstatement of his original appeal, No. 92-50042, and consolidated it with his new appeal, No. 94-50332.
 
 
 10
 Yerger now contends that the district court erred in denying his motion to suppress evidence because (1) the initial warrantless search of the Camares Drive residence exceeded the scope of the written and oral consent of Yerger's cohabitant, Sharyn Stewart; (2) the scope of the consent search was not expanded under the implied consent theory; (3) the warrantless search of the Largo Vista residence was not justified by exigent circumstances; and (4) the warrant search of the Camares residence exceeded the scope of the warrant. We affirm the judgment of the district court.
 
 
 11
 The district court had jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction exists pursuant to 28 U.S.C. § 1291.
 
 II.
 
 12
 The Warrantless Search of the Camares Drive Residence Was
 
 
 13
 Within the Scope of Stewart's Express and Implied Consent
 
 
 14
 Yerger argues that the November 15 consent search of his Camares Drive residence exceeded the scope of Sharyn Stewart's consent because a reasonable person would not have understood that the officers' search would include the file cabinets and file folders where Yerger kept his construction business records. He argues further that even if the file cabinet search was permissible, officers were not permitted by Stewart's consent to scrutinize the documents. We address these contentions in turn.
 
 
 15
 Whether a search went beyond the scope of an authorized person's consent is a determination which we review for clear error. United States v. Perez, 37 F.3d 510, 515 (9th Cir.1994). The standard which we apply in ascertaining the scope of consent given is one of " 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the [person consenting]?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). The district court, applying this standard, found it reasonable to conclude that the search for paper work "would include the cabinets where the papers were kept and within the folders where the individual documents were stored."
 
 
 16
 The scope of a search is generally defined by its expressed object. Jimeno, 500 U.S. at 251; United States v. Gutierrez-Mederos, 965 F.2d 800, 803 (9th Cir.1992), cert. denied, 113 S.Ct. 1315 (1993). Here, the expressed objects of the search were "narcotics, weapons and paper work relating to narcotics transactions." It is objectively reasonable to conclude that Stewart granted the officers a general consent to search in Yerger's file cabinets and file folders where such documents might reasonably be found. We do not agree with Yerger that "paper work" refers only to drug ledgers; rather, we hold that the district court committed no clear error in reading the phrase more broadly to validate the search of the file folders and cabinets.[1]
 
 
 17
 Yerger also contends that even if the officers' search of the file folders and cabinets was permissible, the close scrutiny of documents in the files that took place was not. The argument is unpersuasive for two reasons. First, Yerger bases the argument on cases applying the "plain view" doctrine. See, e.g., United States v. Valles-Valencia, 811 F.2d 1232, 1237 (9th Cir.1987); United States v. Isaacs, 708 F.2d 1365, 1369 (9th Cir.), cert. denied, 464 U.S. 852 (1983); United States v. Wright, 667 F.2d 793, 797-99 (9th Cir.1982). The district court, however, expressly stated that its decision was not based on the plain view doctrine. Second, there is no evidence in the record to suggest that officers did anything more than cursorily look through Yerger's files. As this circuit has previously observed, "[i]n searches of this nature some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." United States v. Hayes, 794 F.2d 1348, 1356 (9th Cir.1986) (citation omitted), cert. denied, 479 U.S. 1086 (1987). Having been granted consent to search for paper work related to narcotics transactions, the officers were reasonable in looking through the documents in Yerger's business files to locate individual relevant documents.[2]
 
 
 18
 In denying Yerger's motion to suppress during the hearing on remand, the district court also noted that
 
 
 19
 the implied consent that flowed [from Stewart's failure to object to the officers' searching through the files] certainly would corroborate the court's ruling in the very first instance that there was an objective reasonableness to the extent and scope of the search that was conducted by these officers on this occasion.
 
 
 20
 Yerger argues that this statement represents an error on the district court's part because while the officers were perusing files upstairs, Stewart was downstairs and gave no indication that she was impliedly consenting to such perusal.
 
 
 21
 The record indicates, however, that after giving her oral consent to the officers' request to "look around" the house, Stewart heard the officers opening and closing file cabinets upstairs. She neither asked the officers to stop or to leave, nor placed any limits on the search. One hour later, she signed a written form giving her written consent to search and acknowledged that her consent was informed and voluntary. She testified that she read the entire one-page form and that she understood her consent would "be granting full and unconditional authority to the sheriff's deputies to enter [her] home and search for narcotics, weapons, and paper work relating to narcotics transactions." She believed that in signing the form, she was giving officers "free and unrestricted access" to her home. After Officer Moore arrived, Stewart repeated her oral consent to him; the officers continued to look through the file cabinets and Stewart did not object.
 
 
 22
 The district court committed no clear error in finding from the above evidence that Stewart's failure to object constituted implied consent. See United States v. Perez, 37 F.3d 510, 516 (9th Cir.1994); United States v. Cannon, 29 F.3d 472, 477 (9th Cir.1994).
 
 III.
 
 23
 Evidence Obtained from the Largo Vista House Was Admissible
 
 Through the Independent Source Doctrine
 
 24
 Yerger contends on appeal that evidence seized from the Largo Vista home must be suppressed because the warrantless entry on November 16 was not supported by exigent circumstances. We review the trial court's determination of the validity of a warrantless entry de novo. United States v. Huguez-Ibarra, 954 F.2d 546, 551 (9th Cir.1992). We agree with Yerger that the entry was not justified by exigent circumstances. See Murdock v. Stout, 54 F.3d 1437, 1440-41 (9th Cir.1995); United States v. Lai, 944 F.2d 1434, 1442 (9th Cir.1991), cert. denied, 502 U.S. 1062 (1992). However, we hold that the evidence seized was properly admitted pursuant to the independent source doctrine, and affirm the district court's ruling.
 
 
 25
 The finding of an unlawful warrantless entry or search does not automatically render excludable all items seized during the subsequent warranted search. Murray v. United States, 487 U.S. 533, 542 (1988); Holzman, 871 F.2d at 1507. Only the evidence tainted by the illegality is excludable. United States v. Salas, 879 F.2d 530, 537-38 (9th Cir.), cert. denied, 493 U.S. 979 (1989). Thus, if the warrant was issued wholly on the basis of the information known to the officers before the unlawful entry, the subsequent warranted search had an independent and lawful source, and evidence discovered and seized thereby is admissible. Id. at 536-37. The independent source doctrine, however, does not apply where the decision to seek a warrant is prompted by observations during the unlawful entry, or where the magistrate's decision to issue the warrant is affected by information obtained during the unlawful entry. Murray, 487 U.S. at 542.
 
 
 26
 On the facts in this case, the officers had independent probable cause to search the Largo Vista residence for evidence of marijuana cultivation prior to their illegal entry based on the layout and remoteness of the house and the officers' observations of equipment like that used in the Avenue E operation. The district court determined that the officers decided to obtain a search warrant before they illegally entered the house. This finding is not clearly erroneous.
 
 
 27
 Moreover, the district court found that the information obtained during the unlawful entry, although presented to the magistrate, did not affect his decision to issue the warrant. The record reveals only one piece of information so obtained--numerous marijuana plants in the basement and two rear bedrooms. Given the other indications of a major marijuana operation observed prior to the entry, the district court did not clearly err in finding that the existence of the marijuana plants did not influence the magistrate's decision.
 
 
 28
 Therefore, the search of the Largo Vista residence pursuant to the warrant was supported by probable cause stemming from the information obtained during the lawful consent search of the Camares residence, and thus produced an independent source of the evidence observed during the prior illegal entry. We affirm the district court's denial of Yerger's motion to suppress this evidence.
 
 IV.
 
 29
 The Warrant Search of the Camares Residence Did Not Exceed
 
 
 30
 the Scope of the Warrant
 
 
 31
 Yerger contends that the November 16 warrant search of his Camares residence was unconstitutional in that the officers seized every single document from Yerger's private files, regardless of their relationship to the search warrant. We review de novo the district court's ruling that the officers did not exceed the scope of the search warrant. United States v. Ayers, 924 F.2d 1468, 1480 (9th Cir.1991).
 
 
 32
 In pertinent part, the warrant permitted seizure of:
 
 
 33
 articles of personal property tending to show the identity of persons in control of premises, vehicles, storage areas, or containers where marijuana may be found, including utility company receipts, rent receipts, addressed mail, photographs, keys and any currency and coin to show monies used in narcotics transactions.
 
 
 34
 During the search, officers seized approximately 6,000 documents, many of which pertained to the Largo Vista construction project.[3] The government offered twelve of these at trial. The record does not reveal whether any of the seized documents were not relevant to the Largo Vista house.
 
 
 35
 Officers conducting a search pursuant to a warrant may seize only those items specifically enumerated in the warrant. United States v. Tamura, 694 F.2d 591, 595 (9th Cir.1982). The wholesale seizure of records not described in a warrant for later detailed examination is "the kind of investigatory dragnet that the fourth amendment was designed to prevent." Id. (citation omitted); see also United States v. Rettig, 589 F.2d 418, 423 (9th Cir.1978).
 
 
 36
 These requirements, as interpreted by our authorities, are to be applied in a practical fashion. In Tamura, for example, the officers executing a search warrant seized large numbers of documents and took them to their office in order to more easily comb through the records to locate those identified in the search warrant. The court upheld the seizure because they "were motivated by considerations of practicality rather than by a desire to engage in indiscriminate 'fishing'." Tamura, 694 F.2d at 597; see also United States v. Chen, 979 F.2d 714, 718 (no flagrant disregard of the warrant's terms where officers' intent was not to engage in "indiscriminate fishing").
 
 
 37
 In United States v. Whitten, 706 F.2d 1000 (9th Cir.1983), cert. denied, 465 U.S. 1100 (1984), agents seized more than 1,000 photographs and personal letters pursuant to a search warrant authorizing the seizure of items to establish the identity of persons in control of the premises. Although disapproving the seizure, the court held that the evidence seized need not be suppressed because the search did not show "flagrant disregard" for the terms of the warrant. Id. at 1010.
 
 
 38
 In Rettig, 589 F.2d at 421-23, by contrast, officers used a warrant to search for marijuana to search for evidence of a cocaine conspiracy, seizing roughly 2,400 items, mostly papers. The court held that the search conducted was not confined to the authorization provided by the warrant; as interpreted and executed, the warrant became an instrument for conducting a general search. Id. at 423; see also United States v. Mittelman, 999 F.2d 440, 444-45 (9th Cir.1993) (remanding for a determination whether the challenged search flagrantly disregarded the terms of the warrant and amounted to an impermissible general search).
 
 
 39
 We find the instant case to be factually aligned with Tamura and Whitten rather than Rettig. Here, officers seized mainly documents that would link Yerger with the Largo Vista address and the illegal marijuana cultivation operation there. Although the sheer volume of documents seized seems excessive, Yerger has not submitted evidence indicating that many--or even any--of the documents were not relevant to Largo Vista and to Yerger's connection with that residence. The mere fact that the government chose to rely on only twelve of the documents does not demonstrate that the others were improperly seized. Unlike in Rettig, the officers here did not use the search warrant as a subterfuge to ferret out evidence of criminal activity other than the marijuana operation at Largo Vista. Rather, the record indicates that the seizure was intended, as in Tamura, to facilitate an efficient review of relevant evidence. Therefore, the seizure of documents from the Camares residence did not exceed the scope of the search warrant.
 
 
 40
 Based on the foregoing reasons, we affirm the judgment of the district court denying Yerger's motion to suppress evidence.
 
 
 41
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Yerger's reliance on Woo Lai Chun v. United States, 274 F.2d 708 (9th Cir.1960), is misplaced as that case is easily distinguishable from this one. In Woo Lai, the search warrant in question was limited to a search for "medicinals and herbs made in China," id. at 709 n. 4, but the agents executing the search thoroughly examined appellant's business documents and seized letters which referred to herbs, id. at 710. The court found that the officers had purposefully searched for something not described in the warrant and therefore ruled the letters inadmissible. Id. at 712. Here, by contrast, the written consent to search form authorized a search for documents as well as narcotics. Therefore, the officers did not exceed the scope of the consent form by searching for paper work
 
 
 [2]
 Yerger's reliance on United States v. Dichiarinte, 445 F.2d 126 (7th Cir.1971), is off the mark. In Dichiarinte, officers obtained consent to search for narcotics. Rather than simply riffling through defendant's personal papers to determine if narcotics were hidden there, they read the papers for indications of criminal activity. The court found that this scrutiny of the papers exceeded the scope of consent. Id. at 130. Here, however, the consent authorized a search for narcotics-related paper work as well as narcotics
 
 
 [3]
 The documents included bank loan applications, merchandise receipts, real estate documents, insurance applications, records of work performed, and bank records