**Wallace H. HAWKINS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20506.**

United States Court of Appeals
Fifth Circuit.

Nov. 13, 1963.

874

S. Gunter Toney, Tallahassee, Fla., for appellant.

Clinton Ashmore, U. S. Atty., C. W. Eggart, Jr., Asst. U. S. Atty., Tallahassee, Fla., for appellee.

Before RIVES and JONES, Circuit Judges, and DAWKINS, Jr., District Judge.

RIVES, Circuit Judge.

This defendant and several codefendants were first tried and convicted in October 1958 on the present indictment and four other indictments charging wire and mail frauds to collect from insurance companies on faked automobile accidents. On appeal, the judgments of conviction were reversed and the cases remanded for new trial.[1]

This defendant was retried on two of the indictments charging mail fraud and wire fraud, respectively, in March 1961. On the mail fraud charges and on counts one and three of the wire fraud charges, the jury returned verdicts of not guilty. It found the defendant guilty on Count 2 of the wire fraud charges. On the judgment based on that verdict, the court sentenced the defendant to imprisonment for four years. That judgment was affirmed by this Court.[2]

On December 5, 1962, while the second appeal was pending, the defendant filed his motion for a new trial based on the ground of newly discovered evidence.[3] That motion was the subject of a full hearing at which affidavits and oral testimony were introduced. On March 28, 1963, subsequent to the issuance of this Court's mandate of affirmance, the district court issued its opinion and entered its judgment denying the motion for new trial. From that judgment the present appeal is prosecuted.

The district court found that, as to the count upon which the defendant was convicted, "the evidence against Wallace Hawkins was primarily the testimony of two self-confessed accomplices, Dennis Heaton and Clevester Vickers. * * * " On the hearing of defendant's motion for new trial, affidavits of Heaton and Vickers were introduced repudiating their testimony against the defendant. Several other affidavits were introduced tending to prove that the defendant was not present at the scene of the faked automobile accident and was not guilty of the crime for which he was convicted. After analyzing those affidavits, the district court concluded that some of the evidence was merely cumulative and that none of

1. Belvin et al. v. United States, 5 Cir. 1960, 273 F.2d 583. Cases involving other defendants charged in the schemes to defraud appear in Everitt v. United States, 5 Cir. 1960, 281 F.2d 429, and Glenn v. United States, 5 Cir. 1962, 303 F.2d 536.

2. Hawkins v. United States, 5 Cir. 1962, 305 F.2d 658, certiorari and other relief denied, 372 U.S. 924, 83 S.Ct. 737, 9 L. Ed.2d 729, application to recall order denied, 372 U.S. 933, 83 S.Ct. 884, 9 L.Ed. 2d 765, rehearing denied March 18, 1963, 372 U.S. 950, 83 S.Ct. 939, 9 L.Ed.2d 976.

3. Rule 33, Fed.R.Crim.P.

it was so material that, if believed, it would probably produce an acquittal on a new trial. As to the newly discovered evidence bearing directly upon the issue of the defendant's guilt or innocence, it is clear that the district court did not abuse its discretion in denying the motion for new trial and, hence, that its judgment should not be reversed upon that ground.[4]

The defendant introduced other newly discovered evidence in an effort to prove that upon his trial he was denied due process of law contrary to the Fifth Amendment of the Constitution of the United States. On that issue, the district court summarized the evidence and announced its conclusions as follows:

"In support of the contention that the Defendant was denied due process of law at the trial an affidavit of Dennis Heaton is attached dated November 17, 1962, wherein he restates a claim that he was compelled to testify to the Grand Jury by certain agents of the Government under threat of having to make a $30,000.00 bond or going to jail, but that if he testified that the accident was faked and that certain people were involved, he could go home as a free man. He further states that he was never indicted.

"At the hearing before this Court, Clevester Vickers testified that prior to the first trial of the Defendant he had talked to an Assistant United States Attorney who had given him the impression that if he would plead guilty, cooperate with the Government and testify in the trials that he would get probation. The record shows that Vickers did plead guilty and was given probation.

"Joseph P. Manners, who was an Assistant United States Attorney at the time of presentment of these matters to the Grand Jury and who tried the case at its first trial, testified before this Court at the hearing on the Motion for New Trial. Mr. Manners stated that he recalled having written a letter to Vickers which was about the same in substance as a letter dated March 24, 1958, to Mr. James E. Clanton, another of those alleged to have been involved in the car wrecking scheme. The letter to Clanton read as follows:

"'Dear James:

"'I am very pleased to inform you that Judge DeVane will go along with our plans and therefore if you will enter your plea on April 7, 1958 at Marianna, Florida, imposition of sentence will be suspended until October, 1958, following the trial of the various cases involved.

"'If you will, Judge DeVane has suggested that you contact your attorney of record, who is S. Gunter Toney, Tallahassee, Florida, and notify him by mail that you intend to enter a plea of guilty on the above date at Marianna. I am this date issuing subpoena to be served upon you as a government witness which will direct you to appear at Marianna on April 7, 1958 at 9:30 a.m. Upon receipt of the same, please write Mr. Toney the above mentioned letter and inform him of your plans. I, meanwhile in Tallahassee after being notified you have been served with a subpoena, will inform Mr. Toney of your intention and also advise him of the Federal laws which protect you from any intimidations or threats of any sort. Once you have been served with this subpoena, you need not discuss this case any further with anyone except Mr. Toney and that is to verify with him that you do not choose to have him represent you any further.

"'If for any reason wou want to discuss this further with me, please feel free to call me collect at any

---

4. Harrison v. United States, 5 Cir. 1951, 191 F.2d 874, 876; Newman v. United States, 5 Cir. 1956, 238 F.2d 861, 863; Newsom v. United States, 5 Cir. 1962, 311 F.2d 74, 79.

time, my office number being 34915 and at home 32088.

" 'I will see you in Marianna about 9:00 a.m. Central Standard Time on April 7, 1958.

" 'Very truly yours,

" 'HAROLD CARSWELL,

" 'United States Attorney

" 'By Joseph P. Manners

" 'Assistant United States Attorney.'

"Manners explained the letters to Clanton and Vickers as meaning that he, Manners, had asked the District Judge to put the case on the calendar for April 7 at Marianna so as to permit the acceptance of pleas of guilty 'so I could serve them with a Government subpoena as witnesses to protect them from the intimidations or threats which they had directly or indirectly told me about that they were affected or concerned about. This is why the letter was drafted in this fashion.'

"Manners further testified that he had not made any promise to anyone that he would attempt to get probation and stated further that the presiding Judge at that time would not permit the prosecution to recommend any sentence. Manners did say: 'I might have indicated to him (Clevester Vickers), yes, that if he cooperated, that I am confident the Court would be aware of his cooperation. This is general prosecution talk.'

"On re-direct examination of Government witness Dennis Heaton at the trial the following question was asked and answer made (Tr. 87):

" 'Q. Has the officer of the United States Attorney or the Postal Inspector or any other * * * Government official or anybody promised you anything to come in here today to testify for the Government in this case?

" 'A. No, sir, they have not.'

"On re-direct examination at the trial of this case witness Vickers was asked and answered as follows (Tr. 128):

" 'Q. Have any of the Government officials tried to influence your testimony in any way?

" 'A. No, sir.

" 'Q. Or made you any promise if you would testify for the Government?

" 'A. No, sir.'

"Defendant contends that the evidence shows that each of the witnesses had, in fact, been promised something by the Government and that therefore both the witnesses and counsel for the government knew or should have known that the answers of the two government witnesses were false. Defendant relies upon the case of Napue v. Illinois, 360 U.S. 264 [79 S.Ct. 1173, 3 L. Ed.2d 1217] (1959), wherein the Supreme Court of the United States stated:

" '* * * it is established that a conviction obtained through use of false evidence, known to be such by representatives of the state, must fall under the Fourteenth Amendment, * * * The same result obtains when the state, although not soliciting false evidence, allows it to go uncorrected when it appears.'

"On the basis of the evidence adduced before this Court at the hearing on the Motion for New Trial which included testimony of Manners, as above stated, and Vickers and affidavits previously referred to, I cannot conclude that either Heaton or Vickers were made such promises by a Government agent so that the Government's trial attorney was charged with knowledge of falsity by the witnesses when they made their denials of such promises. It may be that each of the witnesses was under a good faith impression that his testimony would result in more favor-

able consideration for him but the evidence adduced at the trial was sufficient to enable the jury to reach the same impression; Defendant's counsel even argued this point noting that Heaton had never been indicted and that Vickers had only received probation and had served no period of imprisonment. The vice which the Napue case, supra, sought to eradicate was the suppression of facts from the jury from which the jury might have concluded that the witnesses had fabricated testimony in order to curry favor with the representatives of the state; in the instant case, the essential facts on this point were presented to the jury. In the absence of proof that Government counsel had knowledge of any withheld facts, the Motion for New Trial should be denied on the ground that Defendant was deprived of due process of law."

There was some additional evidence bearing upon the due process issue. An affidavit of James Clanton stated that Joseph Manners, Assistant United States Attorney, promised him that he would attempt to obtain probation for him if he would enter a plea of guilty and testify against other defendants, and that the letter which he received (and which was quoted in the opinion of the district court) had reference to that offer.

Lewis Bass testified orally at the hearing that he also had a conversation with Joseph Manners, Assistant United States Attorney, in the presence of James Clanton and Clevester Vickers; that he heard Mr. Manners tell Vickers " * * * if he'd go along with him, he'd try to get him probation * * *," that "probation wasn't mentioned to me" but "he said he'd help me what he could."

Mr. Manners admitted that he wrote Lewis Bass a letter dated April 1, 1958, reading as follows:

" 'Dear Lewis, I am happy to inform you that Washington has approved the dismissal of the indictment returned against you relative to the faked automobile accident cases and therefore will you please appear with Clevester Vickers and James Clanton on April 7, 1958 at 9:00 a.m. Central Standard Time at the Post Office in Marianna, Florida. At that time I will move the Court to dismiss the indictment against you and have you served with a subpoena so you can officially become my witness.

" 'Thank you for the cooperation you have shown and I hope that we can continue to work together throughout the remainder of these prosecutions.

" 'Very truly yours,
" 'Harold Carswell
" 'United States Attorney
" 'By Joseph P. Manners,
" 'Assistant United States Attorney.' "

Mr. Manners testified that he did not seek the dismissal of the indictment against Lewis Bass because of any promise that he had (allegedly) made to Bass.

The district judge, who had the opportunity of seeing and hearing a number of the witnesses, including Mr. Manners, obviously believed the testimony of Mr. Manners and his explanation of the letters which he had written to Bass, Clanton, and Vickers. The district judge was, of course, in better position than we are to pass on the credibility of the witnesses. We would be reluctant to disturb his judgment were it not for the fact that a careful reading of the testimony of Mr. Manners leaves us in no doubt that he did dangle before the witnesses, as an inducement for their testimony, a probable reward from the trial court itself, perhaps a more moving and appealing consideration for an accomplice to testify than the recommendation of the prosecuting attorney.

As to the witness Heaton, Mr. Manners testified:

"Probably stated that he's have to make his own decision in regards of testifying and waiving his rights under the fifth amendment to the

grand jury and I may have even said that he would become an important witness to me to the extent that if he were indicted that naturally his cooperation would have to be noted by the Courts * * *. Our policy was to prosecute and draw a line and stop, you see, so therefore the only way I would generally talk, to my recollection, would be to anyone, not particularly this case, would be that if he cooperated obviously the Judge would have to be aware of his cooperation, I'm sure he would consider it if he was going to consider any mitigation.

*　　*　　*　　*　　*　　*

"I could have possibly, as I say, stated something to the effect he's have to take his chances, if he cooperated, naturally I'm confident the Court would have to notice his cooperation, but without my telling the Court.

*　　*　　*　　*　　*　　*

"If you are asking me did I ever state particularly to any one individual, 'Look, cooperate and I assure you I will get probation,' or something like that, the answer must be no. Again in ramification of this and what interpretations are of the words of promises and so forth, again I feel confident just generally that I must have said, 'If you cooperate with the government, I'm confident that the Court will recognize this fact * * *.'"

As to the witness Vickers, Mr. Manners testified:

"Q. Did you ever tell Clevester Vickers that you would do what you could for him?

"A. Well, again perhaps in generalities I might have indicated to him, yes, that if he cooperated, that I'm

confident the Court would be aware of his cooperation. This is general prosecution talk."

Mr. Manners admitted that he wrote to Vickers a letter almost identical to the letter written to Clanton. The first sentence of that letter informed Vickers that the trial judge "will go along with our plans." We cannot escape the conclusion that both Heaton and Vickers were induced to testify against the defendant by the hope held out to them by the prosecuting attorney that such "cooperation" would be considered by the trial court.

 In good faith then, the Government could not lead the jury to believe, as to Heaton, that no "Government official or anybody promised you anything to come in here today to testify for the Government in this case"; and, as to Vickers, that no "Government officials tried to influence your testimony in any way. * * * Or made you any promise if you would testify for the Government." At the time these witnesses so testified, the Government must be charged with knowledge that their testimony was false.

As was noted by the district court, the defendant was convicted primarily upon the testimony of these two witnesses. In the language of Mr. Justice Frankfurter speaking for the Court in Griffin v. United States, 1949, 336 U.S. 704, 709, 69 S. Ct. 814, 816, 93 L.Ed. 993, it would be " * * * too dogmatic, on the basis of mere speculation, for any court to conclude that the jury would not have attached significance to the evidence favorable to the defendant had the evidence been before it." [5]

The judgment is, therefore, reversed, and the case remanded with directions to grant the defendant's motion for new trial.

Reversed with directions.

5. See also Griffin v. United States, 1950, 87 U.S.App.D.C. 172, 183 F.2d 990, 992; Mejia v. United States, 9 Cir. 1961, 291 F.2d 198, 201; Petition of Provoo, Dis. Ct.Md.1955, 17 F.R.D. 183, 201.