**UNITED STATES of America,**
**v.**
**William A. SORENSON, Defendant.**
**No. 60–CR–149.**

United States District Court
E. D. New York.
March 1, 1962.

Joseph P. Hoey, U. S. Atty., by Raoul Felder, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

Frederick Abrams, New York City, for defendant.

MISHLER, District Judge.

Motion by defendant for an order suppressing evidence on the ground that it was obtained as a result of an illegal search and seizure and without a search warrant. The specific evidence sought to be suppressed is a plastic bag of white powder alleged to be a narcotic drug.

The Court directed a hearing on the application. The Court heard the oral testimony of New York City Detectives Murray and Rice and of the defendant.

It appears from the testimony that on January 7, 1959, at or about 3:30 A. M., one Thomas Lynch was shot and killed and another man was wounded in Lemay's Bar in Brooklyn. About 11:00 A.M. that morning, the police authorities, through information obtained from an eye witness, ascertained that defendant perpetrated the crimes. In the same manner, they received information as to the general area where defendant lived. Detectives Murray and Rice learned from the landlord of premises 628 78th Street, Brooklyn, who was shown a photograph of defendant, that the defendant resided in a basement

apartment of those premises under the name of William Riley. At about 1:30 P.M. of the same day, Detectives Murray and Rice were let into the apartment by the landlord. The landlord either opened the door with a key or one of the detectives opened the door with a key given to him by the landlord in the latter's presence. The detectives found the defendant asleep on a bed or sofa. They awakened him, placed him under arrest for the homicide and handcuffed him. The detectives asked the defendant for the weapon used in the crime. When they received an unresponsive answer, they started to search the room. There was a clothes closet in the room with sliding doors.

The testimony of the detectives is that the sliding door of the clothes closet was open; that clothes hung to a distance of about 2 feet from the floor; in the corner was a brown paper bag. The testimony is that the paper bag could readily be reached without unduly disturbing any of the articles of hanging clothes, but difficult to see from a distance because of the insufficiency of light.

The testimony of the defendant was that the closet door was closed; that even when opened, other packages and hanging clothes completely obscured the view.

After the search for the weapon had proceeded for about 15 minutes, the detectives came upon the brown bag. When the bag was removed, it was found to contain a plastic bag containing a white powder which was later found to be demerol, a narcotic drug. The search for the gun continued for another half hour but the weapon was not found.

 I find that the container in which the narcotic drug was found was in the general view of the police officers at the time of or soon after the arrest. I find that the closet door in which the

container was found was open at the time the officers entered the room.

Concededly the arrest here was lawful. It follows that the search, of the defendant's person and of the room in which he was arrested, for the weapon used in the commission of the crime was reasonable. The right to be secure against searches and seizures extends only to such searches and seizures as are unreasonable.[1]

In Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, the Supreme Court reversed the conviction of the petitioner because it was based upon evidence seized pursuant to a search of petitioner's house several blocks distant from the place of arrest. The Court defined the right of search incident to arrest at page 30, 46 S.Ct. at page 5, as follows:

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted. See Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543; Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas.1915C, 1177. The legality of the arrests or of the searches and seizures made at the home of Alba is not questioned. Such searches and seizures naturally and usually appertain to and attend such arrests. But the right does not extend to other places. Frank Agnello's house was several blocks distant from Alba's house, where the arrest was made."

---

1. Fourth Amendment states:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no War-

rants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ The search of the room in which the defendant was arrested was reasonable. Were the door to the clothes closet closed, it would have been proper for the police officers to have opened it and searched the closet for the weapon. The determination of the reasonableness of a search is dependent upon all the facts and circumstances of each case. The search for the instrumentality used in connection with crime was not limited by the claimed fact of a closed closet door located in the room and in the presence of defendant at time of arrest.

The Supreme Court in Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, has approved as reasonable, a search far more extensive and intensive than that conducted here. In that case, five agents went to petitioner's apartment to execute on two warrants of arrest issued against petitioner for mail fraud and forgery. It appeared that "* * * the object of the search was to find two $10,000 cancelled checks of the Mudge Oil Company which had been stolen from that company's office and which were thought to have been used in effecting the forgery" (pages 148–149, 67 S.Ct. page 1100). They searched all the rooms of his apartment for about 5 hours, one agent being assigned to each room. At the end of the search, an agent found an envelope marked "George Harris, personal papers". The envelope was torn open and on the inside a smaller envelope was found containing 11 draft registration certificates, and 8 notice of classification cards. This evidence was the basis of the conviction reviewed. There, as here, the evidence seized was unrelated to the crimes for which petitioner was initially arrested (page 149, 67 S.Ct. page 1100). The Court said at page 153, 67 S.Ct. at page 1102:

"The search was not a general exploration but was specifically directed to the means and instrumentalities by which the crimes charged had been committed * * *

agents conducted their search in good faith."

The facts of this case clearly come within the bounds of reasonable search fixed under the facts of Harris v. United States, supra.

The vigorous dissent of Mr. Justice Frankfurter noted at page 165, 67 S.Ct. at page 1108:

"If the agents had obtained a warrant to look for the cancelled checks, they could not be entitled to seize other items discovered in the process. Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231. Harris would have been able to reclaim them by a motion to suppress evidence. * * The Court's decision achieves the novel and startling result of making the scope of search without warrant broader than an authorized search."

Mr. Justice Murphy concurred in this view and observed at page 190, 67 S.Ct. at page 1117:

"A search warrant is not only unnecessary; it is a hinderance."

■ Paradoxical as it may seem, a search incident to a lawful arrest without a warrant is not as limited as one made pursuant to a search warrant because of the specificity required in a warrant. In a search warrant, the place that the search is to be conducted and a description of the items sought are described in detail, and only after a judge or commissioner is satisfied that "* * * grounds for the application exist or that there is probable cause to believe that they exist. * * *."[2] The limited breach of the right is permitted by the Amendment creating the right. Where the right to search is an incident to an arrest, it is not the search that has violated the sacred right to privacy, but rather the arrest. The right having been breached, the limits should be governed by the necessities of the circumstances created by the person subjected to such search.

2. Rule 41(b) and (c) of the Rules of Criminal Procedure, 18 U.S.C.A.

Mr. Justice Murphy, in his dissenting opinion in Harris v. United States, indicated that had he found the search reasonable, the seizure of objects not connected with the original arrest would be deemed reasonable and lawful. He said at page 191, 67 S.Ct. at page 1117:

"It has long been recognized, of course, that certain objects, the possession of which is in some way illegal, may be seized on appropriate occasions without a search warrant. Such objects include stolen goods, property forfeited to the Government, property concealed to avoid payment of duties, counterfeit coins, burglar tools, gambling paraphernalia, illicit liquor and the like. Boyd v. United States, supra, 116 U.S. [616] at pages 623, 624, 6 S.Ct. [524] at pages 528, 529, 29 L.Ed. 746; United States v. Lefkowitz, supra, 285 U.S. [452] at pages 465, 466, 52 S.Ct. [420] at pages 423, 424, 76 L.Ed. 877, 82 A.L.R. 775; Gouled v. United States, 255 U.S. 298, 309, 41 S.Ct. 261, 265, 65 L.Ed. 647. But the permissible seizure of such goods is necessarily dependent upon the seizure occurring (1) during the course of a reasonable, constitutional search, (2) as the result of ready observance of the surrounding premises by the arresting officers, or (3) as the result of the use of such objects in the commission of a crime in the presence of the officers."

The narcotic drug seized during a reasonable, constitutional search, was lawful. Compare United States v. Coots, 1961 E.D.Tennessee, 196 F.Supp. 775, 779, where the Court held that contraband not described in a search warrant cannot be seized in a search conducted pursuant to the search warrant.

Defendant moved to suppress the same evidence in the County Court of Kings County. The Court found:

"* * * that the search for the firearm was perfectly lawful and was not an exploratory search." (p. 11 transcript)

The Court there found (contrary to the finding here) that the contraband was not visible to the eye. The Court there concluded "* * * even though uncovered in a perfectly lawful search, it represents with respect to that contraband only—an unreasonable search within the provisions of the Constitution."

For the reasons heretofore stated, this Court is constrained to arrive at a different result. See Elkins v. United States, 364 U.S. 206, 223–224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669. Motion denied.

Settle order on two days notice.