UNITED STATES of America,
Appellee,

v.

William A. SORENSON, Defendant-
Appellant.

No. 344, Docket 28399.

United States Court of Appeals
Second Circuit.

Argued March 12, 1964.

Decided April 24, 1964.

Raymond Bernhard Grunewald, Asst. U. S. Atty., Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., on the brief), for appellee.

Leon B. Polsky, New York City (Anthony F. Marra, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and LEVET,* District Judge.

LEVET, District Judge.

Sorenson was tried and convicted by a jury on a two-count indictment charging in Count 1 knowing and unlawful purchase of isonipecaine from other than the original tax-stamped package in violation of 26 U.S.C. § 4704(a), and in Count 2 of knowing and unlawful reception and concealment of isonipecaine, knowing the same to have been imported contrary to law, in violation of 21 U.S.C. § 174. He was sentenced to two years imprisonment on Count 1 and ten years on Count 2, the sentences to run concurrently with one another but consecutive to a ten to thirty year sentence of imprisonment imposed by the former Kings County Court on conviction of first degree manslaughter. The claims of error are three: the denial of a motion to suppress; error in the charge; and the unconstitutionality of the presumption contained in 21 U.S.C. § 174 as applied to isonipecaine. Finding no error, we affirm.

I.

Prior to trial, the defendant moved pursuant to Fed.R.Crim.P. 41(e) to suppress the seized narcotics. At a hearing the testimony showed that New York City detectives had information that on January 7, 1959, one Thomas Lynch was shot and killed and another man wounded in Lemay's Bar in Brooklyn, New York, at about 3:30 A.M. At about 11:00 A.M. that morning the police authorities, through information obtained from an eyewitness, were informed that defendant Sorenson perpetrated this crime. Two detectives learned that the defendant resided in a basement apartment at 628—78 Street, Brooklyn. At about 1:30 P.M. of the same day two detectives were admitted by the landlord, unannounced, into the apartment. There they found defendant asleep on a sofa, awakened him, handcuffed him and placed him under arrest for the homicide. After asking defendant for the weapon used and receiving an unresponsive answer, they searched the room. The room contained a clothes closet with sliding doors. When searching for the weapon, the detectives in the corner of the closet came upon the brown paper bag which when removed was found to contain within a plastic bag a white powder later found to be isonipe-

* Sitting by designation.

caine, a narcotic drug. They had neither search nor arrest warrants. The motion was denied in an opinion reported at 202 F.Supp. 524 (E.D.N.Y.1962). Judge Mishler found the arrest valid, the search reasonable and: "[t]hat the container in which the narcotic drug was found was in the general view of the police officers at the time of or soon after the arrest. I find that the closet door in which container was found was open at the time the officers entered the room." 202 F. Supp. at 525. The same motion to suppress, renewed at the trial, was denied by Judge Bartels after a hearing disclosing substantially the same testimony.

■■■■ The entry and arrest were unquestionably valid. "[W]hen a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145 (1925). This right to search and seizure without a search warrant extends to things under the accused's immediate control, Carroll v. United States, supra, 267 U.S. 132, at 158, 45 S.Ct. [280] at 287, 69 L.Ed. 543, and, to an extent depending on the circumstances of the case, to the place where he is arrested. Agnello v. United States, supra, 269 U.S. at 30, 46 S.Ct. at 5, 70 L.Ed. 145; Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 77, 72 L.Ed. 231 (1927); United States v. Rabinowitz, 339 U.S. 56, 61–62, 70 S.Ct. 430, 433, 94 L.Ed. 653 (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. * * *" Preston v. United States, 84 S.Ct. 881.[1]

■■■■ Here, the detectives were searching for a gun believed to have been used by the person arrested in the commission of a homicide. The area searched was certainly within the accused's immediate control and the search of the closet was, under the circumstances, a reasonable place in which to seek the weapon. The discovery during this search of a totally unrelated object, the narcotics, which provided grounds for conviction of a totally different crime, does not render the search invalid. Harris v. United States, 331 U.S. 145, 154–155, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

■■■■ The defendant contends that the circumstances of this case, including the allegation that there was sufficient time for the arresting officers to obtain a warrant, render the search unreasonable. However, "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950). The motions to suppress were, therefore, properly denied.

■■■■ The only serious challenge to the charge concerns the second count alleging violation of 21 U.S.C. § 174. After reading to the jury the now familiar presumption of that section, the court went on to charge:

"According to the statute the unexplained possession of a narcotic drug will support a presumption, first, that the narcotic drug was knowingly and fraudulently imported into the United States contrary to law, and, second, that the offender had knowledge that it was so imported. This presumption, however, does not change the burden of proof which still remains on the Government. It simply shifts the burden of

1. While the search and seizure here at issue were conducted by state officials, the admissibility of the seized items in a federal trial is to be judged as if the conduct were that of federal officers. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

coming forward to the defendant and requires him to overcome the presumption by an explanation of his possession of this narcotic drug."

No exception was taken to this portion of the charge. See U. S. v. Davis, 328 F.2d 864 (2d Cir. March 5, 1964).

The charge was certainly within the permissible limits set by United States v. Mont, 306 F.2d 412 (2d Cir.), cert. denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed. 2d 272 (1962) and United States v. Evans, 312 F.2d 556 (2d Cir. 1963), and is, in the absence of exception, controlling here. This conclusion is not altered by the incorrect statements of government counsel made to the jury, without objection, in his attempt to explain the effect of the statutory presumption. The judge was careful to point out that the burden of proof always remained with the government and taken in the context of the entire trial and charge the prosecutor's remarks do not require reversal.

The second count of the indictment charged the defendant with unlawful receipt and concealment of isonipecaine, a narcotic drug, "knowing the same to have been imported * * * contrary to law," in violation of 21 U.S.C. § 174. At the trial the government chose to introduce no evidence of either illegal importation or the defendant's knowledge of the illegal importation. It chose to rest its case entirely on the proof of possession, invoking the provision of 21 U.S.C. § 174 whereby possession of narcotics "shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." The defendant challenges the constitutionality of the presumption as applied at the trial to possession of isonipecaine.

Isonipecaine is one of a series of narcotic drugs defined in 26 U.S.C. § 4731:

"(f) Isonipecaine.—The word 'isonipecaine', as used in this part shall mean any substance identified chemically as 1-methyl-4-phenyl-piperidine-4-carboxylic acid ethyl ester, or any salt thereof, by whatever trade name designated."

and to which the prohibitions of 21 U.S. C. § 174 apply.

The only evidence in the record casting any light on the nature and substance of isonipecaine may be fairly summarized as follows: The substance at the trial was identified as demerol, known variously as isonipecaine, meperidine hydrochloride and pethidine. It is used for medicinal purposes as a pain killer, is prescribed by doctors and is available by prescription only. We are furnished no information as to the amount of the drug manufactured either here or abroad nor are we referred to any authority on the subject. We have no reason to believe, on the basis of this record, that Congress' enactment of the presumption as applied to isonipecaine is any less reasonable than the same presumption as applied to heroin, United States v. Savage, 292 F.2d 264 (2d Cir.), cert. denied 368 U.S. 880, 82 S.Ct. 129, 7 L.Ed.2d 80 (1961); marijuana, United States v. Gibson, 310 F.2d 79 (2d Cir. 1962); morphine, United States v. Moe Liss, 105 F.2d 144 (2d Cir. 1939), and opium, Yee Hee v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925), as to all of which drugs this or a similar presumption has been held constitutional. The defendant's major reliance is upon Erwing v. United States, 323 F.2d 674 (9th Cir. 1963), in which the Ninth Circuit recently held unconstitutional the presumption of 21 U.S. C. § 174 as applied to cocaine hydrochloride. Assuming the Erwing case to have been correctly decided, it is readily distinguishable on the basis that, as a reading of the opinion makes clear, there was extensive testimony as to the possible source and method of the manufacture of cocaine hydrochloride. The record in this case is barren of any similar testimony.

Affirmed.