Michael Joseph **GURLESKI** and Dorothy Villafranca, Appellants,

v.

**UNITED STATES** of America, Appellee.

Frank **SMITH**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Nos. 25338, 25339.

United States Court of Appeals Fifth Circuit.

Nov. 27, 1968.

Rehearing Denied in No. 25339 Dec. 20, 1968.

Rehearing En Banc Denied in No. 25339 Jan. 7, 1969.

Rehearing En Banc Denied in No. 25338 Jan. 29, 1969.

Dudley D. McCalla, Will G. Knox, Austin, Tex., for Michael Joseph Gurleski, et al.

Brooks Holman, Robert Everett L. Looney, Austin, Tex., for Frank Smith.

Andrew L. Jefferson, Jr., First Asst. U. S. Atty., Ernest Morgan, U. S. Atty., Ralph H. Harris, III, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before GOLDBERG and CLAYTON *, Circuit Judges, and NOEL, District Judge.

GOLDBERG, Circuit Judge: This is a consolidated appeal from convictions of the three appellants for conspiracy to violate the Dyer Act, 18 U.S.C. § 2312, and substantive violations of the same act. Count One of the indictment was a general conspiracy count under which the jury found all three appellants guilty. Count Three of the indictment charged Gurleski with transporting a stolen 1966 Volkswagen from Texas to California and charged Villafranca and Smith as aiders and abettors. Count Four charged another defendant, Branton, with transporting a stolen 1966 Pontiac from Texas to Nevada and charged Gurleski, Villafranca and Smith as aiders and abettors. The jury found Gurleski and Villafranca guilty under Counts Three and Four of the indictment and Smith guilty under Count Four but not guilty under Count Three. These appellants appeal their convictions under all counts.

Appellants Gurleski and Villafranca raise substantial constitutional questions with regard to certain searches and seizures and the admission of evidence therefrom. After careful review, we affirm for reasons that will appear below.

## I.

### THE SEARCH UNDER THE WARRANT

The facts of the search conducted under the search warrant are undisputed. On March 23, 1967, Deputy Gary Simpson of the Travis County Sheriff's Department conducted a search of the premises at 904 St. Elmo Circle in Austin, Texas, pursuant to a validly executed state search warrant. The warrant specified as objects of the search certain

---

\* Judge Clayton, the third judge constituting the court, participated in the hearing and the decision of this case. The present opinion is rendered by a quorum of the court pursuant to 28 U.S.C.A. § 46, Judge Clayton having taken no part in the final draft of this opinion.

enumerated items.[1] It is conceded that the state officer seized several items not specifically listed in the warrant (and none of the items that were listed). Appellant objects to the introduction of the items seized which were not described in the warrant, specifically Government Exhibits 57–64.[2] The government justifies the seizure and introduction of this evidence on either of two alternative grounds. The government contends first that the objects in question were properly admitted because they were seized as "instrumentalities of crime" or "fruits of the crime" during the execution of a valid search warrant. An alternative ground relied on is the Supreme Court's abrogation of the "mere evidence" rule in Warden, Maryland Penitentiary, v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed. 2d 782 (1967). Appellants, on the other hand, liken the search and seizure of these items to a general exploratory search for evidence such as that condemned in United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932). They answer the government's alternative argument by asserting that even if the Supreme Court has abolished the "mere evidence" rule in federal cases, search and seizure of "mere evidence" is still forbidden under Texas law. The principal question for determination remains the extent to which evidence seized during a search conducted under an admittedly valid search warrant is admissible if it is not described in the warrant.

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. A warrant must issue only upon probable cause and "particularly describing the place to be searched and the person or things to be seized". The Supreme Court early stated that "the requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

If this broad language were unwaveringly applied in every case, it is obvious that there could never be a valid seizure of anything not described in the search warrant. However, the *Marron* doctrine has generally not prevailed when the search and seizure was considered reasonable under all the circumstances. Many lower and intermediate federal courts, including those of this circuit, have regarded Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), as formulating an exception to the strict language of *Marron*, thus permitting the introduction of the evidence seized in searches of the type involved in the case sub judice. In *Harris,* the defendant was convicted of unlawful possession, concealment and alteration of Selective Service documents. These documents were admitted into evidence over defendant's objection. The grounds for objection were that agents of the FBI had a warrant to arrest defendant for

---

1. The warrant authorized a search for the following: (1) a 16 mm projector, (2) a Wallensak tape recorder, (3) a record player, (4) a Viewlex filmstrip projector and (5) a combination Viewlex filmstrip projector with record player.

2. These exhibits, all items seized during the execution of a search warrant, were: No. 57, a cigar box; No. 58, a piece of paper with an Austin telephone number on it; No. 59, printed material with two names and telephone numbers; No. 60, a postcard advertising master car key sets; No. 61, a personalized check book in the name of David Keup containing a green Minnesota registration card identifying a 1966 Pontiac car and a receipt issued to David Keup for said car; No. 62, a Stardust Hotel, Las Vegas, "receipt" made out in the name of Mike Gurleski; No. 63, a prior use registry from the Stardust Hotel also in the name of Mr. Gurleski and No. 64, a collection of instruments, including a Texas motor vehicle certificate of title. The government witness also described as coming out of the cigar box a set of silver-colored "pick-keys," a set of gold-colored keys and ignition switch tumblers.

mail fraud violations and in the process of a search incident to that arrest discovered the incriminating Selective Service documents relating to an entirely different offense. The Supreme Court upheld the conviction and found that the objects discovered were properly subject to seizure. The language of the court which forms the principal basis for the many lower court opinions relying on *Harris* is as follows:

> In the present case the agents were in possession of facts indicating petitioner's probable guilt of the crime for which the warrants of arrest were issued. The search was not a general exploration but was specifically directed to the means and instrumentalities by which the crime charged had been committed * * * the agents conducted their search in good faith for the purpose of discovering the objects specified. * * * Nothing in the agents' conduct was inconsistent with their declared purpose. 331 U.S. 153, 154, 67 S.Ct. 1098, 1102.

■ The reasoning of the *Harris* majority, while specifically related to searches incident to a lawful arrest, applies with equal force to a search made under authority of a valid search warrant. The Supreme Court in Warden v. Hayden, supra, impliedly considered all searches under lawful authority (either arrest warrant or search warrant) to be governed by the same limitations.[3] The search must be one directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed. It must not be a general exploratory search through which the officers merely hope to discover evidence of wrongdoing. No sug-

gestion has been made that this search was too thorough or too long in duration. Deputy Simpson was looking for the objects specified in the warrant. When he came upon evidence that indicated possible theft from or of automobiles, he could reasonably have seized the evidentiary matter in question as instrumentalities which might be connected with the theft of the objects specified in the warrant.

■ Our position is buttressed by the Supreme Court's decision in Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), where the court upheld a search incident to an administrative arrest prior to deportation which resulted in the discovery of objects leading to a conviction for espionage. The agents were not specifically looking for such evidence, but they discovered it in the course of an orderly search under lawful authority. The court specifically found that the administrative search was not a subterfuge for a search directed toward uncovering evidence of espionage. Similarly, there was no covert attempt to unmask a car theft ring in the case at bar. There is no evidence that federal authorities had contacted state officials to ask them to make a pretended search for stolen goods. In this case, as in *Harris* and *Abel*, officers acting in good faith and under proper authority discovered evidence of more than one offense. There is no logical or constitutional reason, in the absence of any showing of unreasonableness, why the fruits of such a discovery should not be admissible evidence. The Supreme Court speaking through Mr. Justice Frankfurter spoke logically and directly to this issue when it said:

> When an article subject to lawful seizure properly comes into an officer's

3. Mr. Justice Brennan stated the issue under review in Warden v. Hayden:

> We review in this case the validity of the proposition that there is under the Fourth Amendment a "distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the

other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime." 387 U.S. at 296, 87 S.Ct. at 1644.

possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for. Abel v. United States, supra, at 238, 80 S.Ct. at 697.

The exception to the stringent *Marron* doctrine formulated in *Harris* and reiterated in *Abel* has been followed by the majority of lower federal tribunals.[4] In Johnson v. United States, 110 U.S.App. D.C. 351, 293 F.2d 539 (1961), cert. den. 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118, officers had a search warrant for certain stolen articles, including a vacuum cleaner, clock radio and other valuaables. In the course of searching for these things, an officer looking in a dresser drawer discovered a credit card issued in the name of the complaining witness. The introduction of the credit card into evidence was upheld by the court, relying on *Harris*. The court stated that an officer engaged in a lawful search is not confined to seizing only those items described in the warrant especially where the unlisted items seized are instrumentalities of a crime. In United States v. Eisner, 297 F.2d 595 (6 Cir. 1962), cert. den. 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17, the defendant was convicted of receiving and concealing stolen fur garments. Agents had obtained a search warrant for certain furs which were not found in defendant's automobile. Other furs were in fact seized. The court in upholding this search and seizure again relied on the *Harris* rationale. They reasoned that the discovery of the other furs provided evidence that another crime had been committed which the officers could not ignore. The majority relied on the safeguards that surround the issuance of a search warrant to justify the seizure of nonspecified objects. "Probable cause to search the automobile existed, regardless of what the search developed." 297 F.2d at 597. This is a balanced statement of the law which demands that searches be reasonable, in good faith and not an unwarranted invasion of privacy.[5]

Seymour v. United States, 369 F.2d 825 (10 Cir. 1966), cert. den. 386 U.S. 987, 87 S.Ct. 1297, 18 L.Ed.2d 239, is another example of where a seizure of items not specifically described in the search warrant was upheld. The court recognized the strong sanctions of the Fourth Amendment and also the strong language of the *Marron* opinion but said:

> * * * notwithstanding the specificity of the constitutional prohibition, the courts have apparently recognized a narrow exception dictated by the practicalities of a particular situation as where in the course of a lawful search pursuant to a lawful arrest or the execution of a valid search warrant the officer uncovers evidence of another crime. 369 F.2d at 827.

4. In all candor, it must be admitted that some of the lower federal courts have adhered to the strict language of *Marron* and distinguished the *Harris* opinion on the ground that *Harris* was concerned only with the scope of a search incident to an arrest while the issue was the scope of a search under a search warrant. For example, see United States v. Coots, 196 F.Supp. 775 (E.D.Tenn.1961); United States v. Sorenson, 202 F.Supp. 524 (E.D.N.Y.1962), aff'd 330 F.2d 1018; Woo Lai Chun v. United States, 274 F.2d 708, 79 A.L.R.2d 999 (9 Cir. 1960); United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2 Cir. 1968) (dicta); and from this circuit, Cofer v. United States, 37 F.2d 677 (5 Cir. 1930).

5. The case of Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957), cited by appellant is an example of an unreasonable bad faith search. There, agents removed the entire contents of a house and attempted to introduce every item in evidence. There was not even a pretense of a search directed toward specific objects. Rather there was a general exploratory search condemned by the decisions of every court in the United States. In contrast, the officers who investigated the home of Villafranca and Gurleski did not engage in any wholesale removal of evidence but seized only articles which they discovered incidentally during a limited search for objects described in a search warrant.

Finally, this court has upheld the government's position on the admissibility of the evidence in question. In the leading case of Bryant v. United States, 252 F.2d 746 (5 Cir. 1958), officers were empowered to search only for heroin. Instead, they discovered and seized gelatin capsules and balloons and milk sugar, all possible ingredients of narcotics operations. Defendant objected to the introduction of these items into evidence on the ground that they were outside the scope of the search warrant. Nevertheless, this court found that the search and seizure of these possible instrumentalities of a crime was reasonable under the circumstances. In Barnes v. United States, 374 F.2d 126 (5 Cir. 1967), this court upheld another seizure of evidence not strictly within the scope of the warrant. This court stated:

> The search warrant was issued in accordance with Rule 41(b) (2), F.R. Crim.P. which authorizes search warrants for property which has been used in the commission of criminal offenses. Since the postal money order stub and hammers fell into this category it was not necessary that they be specifically listed in the warrant. 374 F.2d at 128.

▮ This search was limited in scope and duration. It was conducted under lawful authority obtained from an impartial magistrate. The objects seized, although not described in the warrant, had a reasonable relation to the purpose of the search. Johnson v. United States, supra; United States v. Russo, 250 F. Supp. 55, 58 (D.C.Pa.1966). We have emphasized that the seized items could easily be classified as fruits and instrumentalities of a crime, but since Warden v. Hayden, supra, it is unnecessary for us to state unequivocally that the seized objects were in fact fruits and instrumentalities. A finding that the objects are reasonably related to the offense committed is all that is necessary under federal law. Appellants suggest that under Texas law, objects must still be definitively classed as fruits and instrumentalities of a crime before they are admissible. Our examination of the applicable Texas law, §§ 18.01, 18.02 and 18.19, Vernon's Ann.Texas Code of Criminal Procedure, convinces us that the Texas statutes are no more demanding than the Fourth Amendment of the United States Constitution and Rule 41 (b), Federal Rules of Criminal Procedure. These statutes would not prevent the use of "mere evidence" in Texas if the Constitution permits its use in federal courts. In the absence of Texas decision to the contrary, we conclude that Texas courts would follow Warden v. Hayden and admit relevant "mere evidence". We have carefully examined the authorities cited by appellants and other decisions as well, and we conclude that this search of March 23 was reasonable under all the circumstances and the evidence obtained was properly admitted.

## II.

## THE SEARCHES CONDUCTED WITHOUT A WARRANT

### A.

*The search of March 29, 1967.*

Deputy Simpson returned to the premises at 904 St. Elmo Circle in Austin on March 29, 1967, and while there searched a 1959 Mercury vehicle. The deputy sheriff testified without contradiction that Mrs. Villafranca gave both oral and written consent to a search of the premises and the executed written consent with Mrs. Villafranca's signature is Government's Exhibit 65. In addition, the record shows Mrs. Villafranca herself opened the trunk of the car. Gurleski objects to the introduction of evidence taken from the automobile, principally on the ground that Mrs. Villafranca could not authorize a search of his car no matter how voluntary her consent to that search.[6] He urges alternatively

6. The following items were taken from the trunk of the Car: (1) a small bucket or container, (2) a hand drill, (3) a rivet gun, (4) a screwdriver, (5) assorted rivets, (6) gloves, (7) a rag, (8) an awl, (9) a broken screwdriver and (10) various other small items such as hooks and rivets.

that even if she could consent to a search of the car, she could not consent to the search of the *trunk* of the car because the locked trunk was personal and private.

■ The principal issue for determination is thus whether Mrs. Villafranca, who was not the wife of Gurleski, could consent to a search of his automobile. At the outset, the government contends that counsel for Gurleski first brought this evidence to the attention of the jury and that he did not object to its admission. However, the record indicates that counsel made an oral motion to suppress and thus presented the trial court an opportunity to determine this issue. Such a motion is sufficient to preserve the issue for appellate review.[7]

The authorities are split on the issue of consent by one person to a search of another's belongings or residence. The invariable criterion for decision in these cases is whether the search and seizure was reasonable under the circumstances. Too numerous for citation, are the cases which reiterate that the Fourth Amendment prohibits only those searches and seizures which are unreasonable. The Supreme Court stated in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950):

> What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are "unreasonable" searches * * *. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. 339 U.S. 56, 63, 70 S.Ct. 430, 434.

■ The uncontradicted testimony of Deputy Sheriff Simpson indicates that the search of this car was reasonable beyond any doubt. Mrs. Villafranca gave her oral permission to the search of the car. The car was parked immediately in front of the joint residence of appellants Gurleski and Villafranca.

The officers certainly believed the automobile was jointly owned as well because Mrs. Villafranca had possession of the keys which she used to help the searching officers by opening the trunk for them. The officers took the items described above which they eventually learned belonged to Gurleski.[8] There is no evidence of coercion; the search was not even conducted in conjunction with an arrest. With the record indicating purely voluntary oral and written consent, this search was clearly reasonable under all the circumstances.

■ Appellants contend, however, that reasonableness is not the appropriate standard in all cases. They rely on Cofer v. United States, 37 F.2d 677 (5 Cir. 1930), where this court held that a "wife was without authority to bind her absent husband by waiving a legal warrant, or consenting to an unauthorized search". 37 F.2d 677, 679. The Fifth Circuit has never repudiated this doctrine of not allowing a wife to waive her husband's constitutional rights. However there is no husband-wife relationship in the case at bar. Rather two unrelated persons were living together as man and mistress. We think that the *Cofer* doctrine should not be extended to situations beyond the close confidential marital relation it was designed to protect. Instances of "waiver" of a defendant's rights by another are not unusual. For example, in United States v. Eldridge, 302 F.2d 463 (4 Cir. 1962), the defendant loaned his car to a friend for the day. Police suspected that the car might contain stolen firearms. They obtained the friend's consent to search the car. Ever cooperative, the friend voluntarily opened the trunk of the car, and officers found and seized two stolen Coast Guard radios. The court in upholding the search and admitting the evidence found that "lower federal courts have deemed searches reasonable if consented to by the person in lawful possession of the articles seized, or the prem-

---

7. Waldron v. United States, 95 U.S.App. D.C. 66, 219 F.2d 37, 41 (1955).

8. Gurleski's counsel intimated that the items found in the trunk of the car actually belonged to the witness Hinton.

ises on which they are found * * *." 302 F.2d at 465. The majority analyzed carefully the relationship between the defendant and the person authorizing the search of defendant's car. While agreeing that the bailee's right to possession was not very formal or durable, the court concluded that he possessed enough indicia of ownership and control to authorize the search. The court's analysis placed the onus of responsibility for the decisive search and seizure on the defendant himself.

> Still, for the time being Nethercott was clothed with rightful possession and control and could do in respect to the automobile whatever was reasonable and not inconsistent with its entrustment to him. No restriction was imposed on him except to return with the car by a certain hour. Although the defendant knew of the presence of the stolen radios in the trunk, he apparently did not think it worthwhile to take the precaution of forbidding his bailee to open the trunk or permit anyone to look into it. *He reserved no exclusive right of privacy in respect to the trunk when he delivered the key. * * * Access to the trunk is a normal incident to the use of an automobile.* (Emphasis added.) 302 F.2d 463, 466.

The last two sentences above are a clear refutation of appellant's alternative point that even presuming a valid consent, the trunk was a place of special privacy. It is clear that Mrs. Villafranca had an unrestricted right to operate the vehicle and had possession of the keys at all relevant times.

■ In Teasley v. United States, 292 F.2d 460 (9 Cir. 1961), incriminating evidence was found as a result of a search of the defendant's apartment authorized by a co-defendant who apparently shared the apartment. The court's analysis is instructive with regard to the facts in the instant case.

> The arresting officers did not force or break their way into appellant's apartment but entered the apartment with Skinner who had a key to appellant's apartment. Nothing in the record indicates that Skinner obtained the key unlawfully, nor that the arresting officers forced Skinner to admit them to appellant's apartment. Appellant's own testimony indicates that Skinner was his friend, and that Skinner spent much time in appellant's apartment * * *. There is other testimony that Skinner was or had been living with appellant * * * for some week or ten days prior to appellant's arrest. 292 F.2d 460, 464.

The facts of the instant case are similar to *Eldridge,* supra; *Teasley,* supra. In each case, the consenting party maintained unrestricted possession of the key to whatever was searched. Other factors considered significant in determining that a search with consent of a party other than the defendant was reasonable are: (1) voluntariness of the consent; (2) place of the search was the party's home also; (3) the premises were under the party's immediate and complete control; (4) the search did not extend to the defendant's "personal effects" and (5) there was nothing "unfair, unreasonable or oppressive" about the search and seizure. Cf. Roberts v. United States, 332 F.2d 892, 897 (8 Cir. 1964), cert. den. 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed. 2d 274. These factors are all present in the instant case, and we hold that the search was reasonable and the evidence admissible under all the circumstances. We subscribe to the view that "where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either". United States v. Sferas, 210 F.2d 69, 74 (7 Cir. 1954), cert. den. Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086.

### B.

*The search of April 27, 1967.*

This search, also made without a warrant, took place immediately after the arrest of Mrs. Villafranca. State and federal officers arrested Mrs. Villafranca under a valid arrest warrant and,

at her insistence, took her by her home so that she might change clothes.[9] Mrs. Villafranca read the *"Miranda*-type" warnings from a card on the way to her home. The officers thought it necessary to search the home for weapons, instruments of the crime or possible means of escape. The search revealed certain items later introduced into evidence.[10]

■ Any objection which appellants could make to this search and seizure was waived by the failure of counsel to make a motion to suppress or to object to the evidence obtained when it was introduced at trial. The rule is too familiar to need citation that in the absence of bringing the error of illegally seized evidence to the attention of the trial court, the objection is waived unless there has been a fundamental miscarriage of justice. Admission of the articles seized in the search of the house would certainly not be fundamental error considering the overwhelming weight of testimony and evidence connecting these defendants with the crimes charged. Though it is unnecessary for us to decide the question, we are compelled to state that all of the evidence indicates that this search was a reasonable one incident to the arrest of Mrs. Villafranca. In addition, Mrs. Villafranca gave voluntary unequivocal oral and written consent to this search.

### III.

### OTHER POINTS RAISED BY MRS. VILLAFRANCA

■ Other than those discussed above, Mrs. Villafranca asserts only three alleged errors of the trial court peculiar to her. All are without merit. She complains first of the trial court's charge to the jury in that it failed to limit the jury's consideration of hearsay statements and admissions and acts of co-defendants to the conspiracy portion of the indictment. This contention has been decided adversely to appellant notably in the opinion of Judge Learned Hand in United States v. Olweiss, 138 F.2d 798 (2 Cir. 1944), cert. den. 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047. The court there held that the admission of such statements is not limited to the hearsay exception for conspiracies, "but is merely an incident of the general principle of agency that the acts of any agent, within the scope of his authority, are competent against his principal." 138 F.2d 798, 800.

■ Appellant Villafranca also urges that the trial court erred, in view of her record, in sentencing her to serve three-year terms on Counts One, Three and Four to run concurrently. It is elementary that sentencing is discretionary with the trial judge, and he did not abuse his discretion by fixing punishment within the statutory limits. We have no warrant for reversing because the defendant had small children and that this was her first conviction. Indeed, the trial judge could have given consecutive sentences on all the counts. Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Pereira v. United States, 347 U.S. 1, 74 S. Ct. 358, 98 L.Ed. 485 (1953).

Finally, Mrs. Villafranca complains that the evidence is insufficient to support the jury's verdict. She makes much of the failure of the prosecution to show a division of the proceeds of the stolen car operations. Appellant claims that the evidence shows only that $100 was paid to her to drive a car to the West Coast. While this may be true, it would be a strange law of conspiracy that required each conspirator to receive his rightful share of the "proceeds" before

---

9. Mrs. Villafranca had been arrested at her place of employment and was dressed only in slacks and a blouse. She stated that she wished to change clothes so that she might look more presentable at whatever legal proceedings were to follow her arrest.

10. The following evidence was introduced as exhibits for the government: (1) a little blue address book; (2) vials; (3) pliers; (4) clips; (5) screwdriver; (6) flashlight and batteries; (7) gloves; (8) stove bolts; (9) auto license fasteners and (10) wirecutters.

he could be found guilty, And, indeed, that is not the law. There is a sufficient amount of credible evidence, particularly in the testimony of Hinton, that a jury could reasonably find that Mrs. Villafranca was an integral part of the conspiracy and guilty of aiding and abetting the offenses charged.

## IV.

### POINTS RAISED BY APPELLANT SMITH

If appellant Smith is correct, his was surely one of the most error-filled trials in the annals of Anglo-American jurisprudence. In his two briefs, he assigns no less than fifty-two points of error, Some of them raise substantial questions which will be treated below. The rest are so totally frivolous and without merit that they will be dismissed without discussion.

#### A.

*Denial of the motion for severance*

Rule 14, Federal Rules of Criminal Procedure, provides for relief from prejudicial joinder at the discretion of the trial court. A denial of severance is reversible only upon a showing of abuse of that discretion. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954).[11]

The cases cited by appellant lend no support to his argument for severance. The principal case relied on, De Luna v. United States, 308 F.2d 140, 1 A.L.R.3d 969 (5 Cir. 1962), reh. den. 324 F.2d 375, involved a situation where the interest of the co-defendants were severely conflicting. The court noted the noncooperation between attorneys for the co-defendants and the attempts by each defendant throughout the trial to shift culpability to the other. The evidence in the instant case is to the con-

trary in that counsel for all defendants cooperated fully in urging the same objections and incorporating or joining common motions, pleas and points of errors. No defendant attempted to implicate only the other defendants. Thus, the telling consideration of *De Luna* is not present in this case.

Decisions such as Barton v. United States, 263 F.2d 894 (5 Cir. 1959), and Schaffer v. United States, 221 F.2d 17, 54 A.L.R.2d 820 (5 Cir. 1955), are not persuasive. In each of those cases, a co-defendant had made a confession or statement which gravely implicated the defendant seeking severance while tending to exculpate the co-defendant. The courts quite properly believed that the admission of the statements in a joint trial would cast one party as the cooperative witness and picture the other as both unresponsive and guilty. No such situation exists here where efforts of defense counsel were highly coordinated. There was no abuse of discretion in denying severance to defendant Smith.

#### B.

*The alleged error in not allowing Smith's counsel to comment on the failure of the other defendants to testify.*

Prior to trial, the district judge ordered that defendants who took the stand would not be allowed to comment upon the ones who did not. Appellant contends that this order was prejudicial in that his defense was antagonistic to that of the other defendants and that the attorney for nonappealing defendants Woods and Garner was trying to shift the blame for their acts to Smith. Because of this, counsel argues that he "owed the duty" to employ the trial tactic of commenting on the failure of other defendants to testify.

This contention is very similar to the one raised as to severance. Again,

11. Absent some abuse of discretion, to be demonstrated by a clear showing of prejudice and the consequent denial of a fair trial, the determination is not subject to reversal.
 Smith v. United States, 385 F.2d 34, 37 (5 Cir. 1967).

The nature of the trial court's discretion is discussed in depth in Peterson v. United States, 344 F.2d 419, 422 (5 Cir. F.Supp. 78, 81–82 (S.D.N.Y. 1962), aff'd 1965); United States v. Kahaner, 203 317 F.2d 459, cert. den. 375 U.S. 836, 84 S.Ct. 73, 11 L.Ed.2d 65.

appellant relies heavily on De Luna v. United States, supra. The *De Luna* holding was:

> In a criminal trial in a federal court an accused has a constitutionally guaranteed right of silence free from prejudicial comments, even when they come only from a co-defendant's attorney. If an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried separately. 308 F.2d 140, 141.

The *De Luna* rule applies only when it is counsel's *duty* to make a comment, and a mere desire to do so will not support an incursion on a defendant's carefully protected right to silence. Clearly, a duty arises only when the arguments of the co-defendants are antagonistic. As we pointed out in our discussion of the severance question, the defenses of Smith and his co-defendants were not antagonistic as that term is defined in *De Luna*. True antagonistic defenses are exemplified in *De Luna*. There, the party who testified claimed that he was an innocent victim of circumstances in that his cousin had tossed some narcotics to him right before an arrest was made and that he did not know that his cousin had been transporting narcotics. Counsel for the nefarious relative asserted that the defendants had been together for the whole caper. Thus, to demonstrate the innocence of Gomez, it was the *duty* of his counsel to comment on the failure of cousin De Luna to contradict Gomez's version of the incident. In this case, on the other hand, counsel for appellant alludes to only one minute segment of the trial where he claims one defendant attempted to exculpate himself in this manner. This portion of the testimony does not have the effect counsel for Smith imputes to it. The record substantially indicates a highly coordinated defense by all the defendants and a united, spirited attack upon the credibility of witnesses Hinton and Boyd, neither a defendant in this case.

The Eighth Circuit has held on similar facts that there was no error in not allowing a comment on the failure of other defendants to testify. Hayes v. United States, 329 F.2d 209 (8 Cir. 1964), cert. den. 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748. In *Hayes*, the defendants were charged with embezzling union funds. None sought to escape criminal responsibility by blaming the others. The only testimony of the defendant in *Hayes*, like Smith at the trial below, was that he had committed no wrongful acts. The court held that where a defendant makes only a simple statement of his innocence, no benefit could inure to such defendant by allowing him to call the jury's attention to the fact that co-defendants did not testify. Any imaginable benefit would have to be weighed against the possible detriment to the other defendants. There has been no showing that the court's order hindered appellant's trial strategy. There has been no showing of possible prejudice remotely comparable to that in *De Luna*. Appellant's counsel has shown us no duty to bring the silence of other defendants to the jury's attention. The judge's order was not erroneous or prejudicial.

## C.

*Alleged prejudicial comment by the government attorney with respect to the "secret" or "confidential" serial identification marks and the refusal of the trial court to allow cross-examination as to the location of these marks.*

The offending statement of the government attorney for which appellants sought to have a mistrial declared reads as follows:

> If Your Honor please, we object to this witness answering that question. We do not think that any issue before the Court at this time requires that this witness or any other witness to disclose the location, either exact or in the near vicinity of the confidential number which apparently is placed there to avoid just the kind of circumstances we are dealing with in

this case. To disclose the location would seriously impair investigations of this kind and contribute substantially to success of operations like this in some future case.

Appellant's attorney moved for mistrial upon the issuance of these remarks, but significantly did not see fit to ask for a cautionary instruction. This could only be due to the fact that this was a brief, sober statement of why the government preferred not to divulge this evidence. There was no inflammatory language and no possibility that the statement was intended to create prejudice in the jury's mind. Despite appellant's long, flourishing argument to the contrary, these remarks of counsel for the United States must be considered extremely insignificant in the course of this long trial.

■■■ Appellant next insists that the trial court committed reversible error in not allowing him to cross-examine Agent Powers as to the location of these secret identification numbers. The gist of this contention is that the numbers might have been located on some easily removable part of the automobile and that someone might have tampered with the evidence or that the evidence might not be accurate. However, appellant laid no foundation for proceeding on such a theory, and location of the secret identifying numbers appears to be wholly irrelevant to any defense asserted by Smith. Just as the prosecution need not generally divulge the name of an informer unless some materiality is shown, they need not reveal the location of these marks, which are a highly valuable tool to law enforcement officers in discovering and solving car thefts. In addition, this court has already answered this question contrary to appellant's contention in Williamson v. United States, 272 F.2d 495 (5 Cir. 1959) cert. den. 362 U.S. 920, 80 S.Ct. 672, 4 L.Ed.2d 740. The trial judge's ruling did not deprive defendant of his right of cross-examination.

### D.

*Denial of motion to keep Smith's previous criminal record from the jury.*

■■■ Defendant Smith had been convicted of car theft in 1949 and of being an accomplice to robbery by firearms in 1952. He obtained a full pardon from the State of Texas between those offenses and his trial for this offense. He thus asserts that the pardon bars the introduction of evidence of these convictions for impeachment purposes. Logically, this is not a well-founded proposition. A pardon for any other reason than subsequent proof of innocence does not obliterate the defendant's previous transgressions particularly as they may bear on his present character and veracity. Any number of reasons may lie behind the granting of an executive pardon, but the granting of a pardon does not in itself indicate any defect in previous convictions. Neither does it negate any bearing that they may have on present credibility. Appellant introduced no evidence concerning the motives behind the granting of the pardon. In the absence of doubt being cast on the validity of these convictions, the pardon is not a bar. Richards v. United States, 89 U.S.App.D.C. 354, 192 F.2d 602, 30 A.L.R.2d 880 (1951), cert. den. 342 U.S. 946, 72 S.Ct. 560, 96 L.Ed. 703.

■■■ Smith further argues that the convictions were too remote. The matter of remoteness is another matter within the sound discretion of the trial court. Goddard v. United States, 131 F.2d 220 (5 Cir. 1942). Here, while one conviction was eighteen years old, it nevertheless was for an offense identical to the one for which Smith was on trial. Thus, the trial court could have considered it relevant and not overly remote, and the trial court's determination should not be reversed on appeal.

### E.

*The competency of witness Hinton and the possible perjury of witness Boyd.*

Appellant Smith reiterates throughout his brief on appeal that he believes

Richard Hinton was not a competent witness. He assigns as a specific point of error the trial court's failure to grant his motion to require the witness, Richard Hinton, to undergo a medical examination to determine competency. It is apparent that Hinton's testimony was often confusing and occasionally difficult to follow, but the record reveals no glaring inconsistencies or contradictions. The major discrepancy seems to be Hinton's testimony that Smith supplied identification for three of the stolen vehicles while at earlier grand jury proceedings and in an interview with FBI Agent Chapman, he had testified that only two of the essential papers came from Smith. This is a mere evidentiary matter surely having no great bearing on the guilt or innocence of Smith with respect to the offenses with which he was charged and convicted.

 The general rule is that the determination of the competency of a witness is within the sound discretion of the trial court. Carrado v. United States, 93 U.S.App.D.C. 183, 210 F.2d 712 (D.C. Cir.1953), cert. den. sub nom. Atkins v. United States, 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140; Manfredonia v. United States, 374 U.S. 1020, 74 S.Ct. 876, 98 L.Ed. 1141; Smith v. United States, 349 U.S. 932, 75 S.Ct. 777, 99 L.Ed. 1262. The judge, at his discretion, may order a physical examination. Nothing in the holding of United States v. Tannuzzo, 174 F.2d 177 (2 Cir. 1949), cert. den. 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493, cited by appellant, requires that the trial judge do so. The only evidence relating to Hinton's credibility being his previous brief addiction to narcotics (aside from his involvement in the alleged offenses), the trial judge was correct in finding that Hinton was competent to testify. Use of narcotics affects only the weight and credibility of testimony, not competency of the witness. Brown v. United States, 222 F.2d 293 (9 Cir. 1955). The jury was made well aware of Hinton's involvement with narcotics through the intense cross-examination of counsel. The jury chose to believe the witness, and their verdict should not be overturned on appeal.

 The other principal government witness was James Boyd, and his testimony is assailed on the grounds that he committed perjury. The alleged perjury pertains to Boyd's assertion that the government did not specifically promise him anything in return for his testimony. Appellant attached various affidavits indicating perjured testimony by Boyd to his two motions for new trial. These affidavits were controverted by Mr. Jefferson, the government's attorney. The affidavits were conflicting as to what Mr. Boyd was promised, and the trial court resolved this conflict in favor of the government. Ordinarily, as in the instant case, the trial court may decide a motion for new trial upon affidavits without a hearing. Lyles v. United States, 272 F.2d 910 (5 Cir. 1959), cert. den. 356 U.S. 931, 78 S.Ct. 773, 2 L.Ed.2d 761.[12]

### F.

*The objection to the court's charge to the jury that "the witnesses, Hinton, Badger, Branton, and Boyd are accomplices of the defendants in this case".*

 Appellant insists that the above instruction invaded the province of the jury and in effect instructed them to

---

12. Compare Hawkins v. United States, 324 F.2d 873 (5 Cir. 1963), with Everitt v. United States, 353 F.2d 532 (5 Cir. 1965). In the case sub judice, appellant significantly did not offer an affidavit from the witness Boyd concerning the alleged perjury. The challenge to Boyd's testimony is essentially another challenge to credibility which has already been weighed by the jury.

The new evidence bore solely on the question of the credibility of the witness. Appellate courts are particularly cautious about reversing denials of motions for new trial on the ground of newly discovered evidence where such evidence relates solely to matters of credibility of witnesses against the accused. Everitt v. United States, 353 F.2d 532, 533.

return a verdict of guilty. Standing alone, this statement might be prejudicial, but appellant has quoted it out of context. It is clear that the judge was instructing simply on the weight to be accorded and the close scrutinization to be given to accomplice testimony. The suggested criminal jury instructions by Judge La Buy in the Manual on Jury Instructions in Federal Cases, 33 F.R.D. 523, 577, are very similar.

 Instructions must be considered in the overall context they are given. United States v. Birnbaum, 373 F.2d 250 (2 Cir. 1967), cert. den. 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99. In Birnbaum, Judge Kaufman discussed the function of appellate courts in evaluating a trial judge's instructions to the jury.

> In evaluating the instructions to the jury, not only must each statement made by the judge be examined in light of the entire charge, but the charge itself can only be viewed as part of the total trial. Often isolated statements taken from the charge, seemingly prejudicial on their face, are not so when considered in the context of the entire record of the trial. 373 F.2d 250, 257.

Measured by this standard, the trial judge's instructions were not prejudicial at all. Immediately before the "offending" statement, the judge had instructed the jury carefully that each defendant was presumed to be innocent until proved guilty beyond a reasonable doubt. Cf. United States v. Beadon, 49 F.2d 164, 169 (2 Cir. 1931), cert. den. 284 U.S. 625, 52 S.Ct. 11, 76 L.Ed. 533.

### G.

*Sufficiency of the evidence.*

 Appellant Smith finally argues that there is not sufficient credible evidence to sustain his conviction under Counts One and Four of the indictment. One of the reasons he assigns for this is a failure to positively identify him as the Frank Smith involved in the conspiracy. The basis for this is that one of the witnesses at the trial, Frank

Smith, Jr., appellant's son, worked at the same location as appellant and could have been the Frank Smith mentioned in all the testimony. There is no merit to this contention, a rather flagrant breach of paternal loyalty. Positive identification of the defendant was made by both of the principal government witnesses. There is no showing that Frank Smith, Jr., was in the courtroom during these identifications or at any other crucial time. Further, all of the cases cited by appellant on the question of identification, whether affirming or reversing a conviction, stand only for the basic proposition that the question of sufficient identification of the defendant is for the jury. The jury, by its verdict, has decided that this particular Frank Smith was the person identified and that decision has ample support in the evidence. Cf. Smith v. United States, 358 F.2d 695 (5 Cir. 1966), cert. den. 384 U.S. 942, 86 S.Ct. 1463, 16 L.Ed.2d 540.

 Smith also asserts that there is no showing that he had knowledge that the cars were stolen, that they were to be transported in interstate commerce or that the cars ever crossed the Texas border on their way to California and Nevada. There appears to be no direct evidence that Smith knew the cars were stolen, but there is ample evidence from which the jury could have inferred that he had such information. There would be little other use for the preparation and delivery of certificates of titles, plates and a full set of papers on wrecked cars if such documents and equipment were not to be used to facilitate sales of stolen automobiles, in the absence of any showing that there was an actual sale of the wrecked remains of the cars matching the papers. There is other evidence from which the jury could have inferred that Smith knew the cars were stolen such as his alleged phone call to the West Coast to warn the other conspirators. Moreover, Smith was not paid a unit price for the vehicle identification he provided but rather was to be paid half the selling price of the automobiles, a definitely unusual "busi-

ness" arrangement. The phone call mentioned above provides evidence that he knew the cars had been transported across state lines to California. In any event, once it is shown that a defendant knew stolen cars were involved, the government need not show that he knew they moved in interstate commerce to support a Dyer Act or conspiracy conviction. Donaldson v. United States, 82 F.2d 680 (7 Cir. 1936); Loftus v. United States, 46 F.2d 841 (7 Cir. 1931). In summation, there is sufficient credible evidence connecting Smith with the conspiracy that this court should not reverse the jury's verdict on appeal. The reviewing court should sustain the verdict of a jury "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 499, 86 L.Ed. 680 (1941).

As stated before, appellant Smith cites some fifty-two points of error, and the most significant of these have been discussed in this opinion and all of the others have been considered and are either frivolous or without enough merit to warrant any discussion. With regard to most of these alleged errors, we quote from the majority opinion in Glasser v. United States, supra, where the court stated:

> We must guard against the magnification on appeal of instances which were of little importance in their setting. 315 U.S. 60, 83, 62 S.Ct. 457, 471.

Therefore, the convictions of appellants Gurleski, Villafranca and Smith are in all things

Affirmed.

### ON PETITION FOR REHEARING EN BANC IN NO. 25339.

Before GOLDBERG and CLAYTON*, Circuit Judges, and NOEL, District Judge.

*Judge Clayton, the third judge constituting the court, did not participate in this de-

PER CURIAM:

In his petition for rehearing, appellant Gurleski objects to our conclusion in the original opinion that he had waived any objections to the search and seizure incident to the arrest of Mrs. Villafranca. Counsel for Gurleski insists that the trial judge announced prior to trial that the objections of any defendant would inure to the benefit of all defendants. The trial judge did make such a statement, but when evidence from the search in question was admitted at the trial, appellant's counsel announced, "I don't rise to object. I am just trying to identify how far 90 is." Under the circumstances, we will concede the semantical phenomenon contended for by appellant and treat this express disclaimer of objection as a valid objection to the evidence in question. Nevertheless, we hold that the record indicates beyond any doubt that the search of Mrs. Villafranca's home at the time of her arrest was reasonable in purpose, scope and duration. Moreover, the evidence is conclusive that Mrs. Villafranca gave her free uncoerced oral and written consent to this search.

We have carefully considered the other contentions advanced in this petition for rehearing and find that they are without merit.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35, Federal Rules of Appellate Procedure: Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

### ON PETITION FOR REHEARING EN BANC IN NO. 25338.

PER CURIAM:

Upon reconsideration of all briefs received by the court on behalf of appel-

cision to deny the petition for rehearing filed herein.

lant, Frank Smith, and a review of all briefs of Smith's appealing co-defendants, we are of the view that the case has been correctly decided.

The Petition for Rehearing is denied, and no member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12), the Petition for Rehearing En Banc is denied.